**AMERICAN PERMAC, INC., and Boewe Maschinenfabrik, GmbH, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**Court No. 85–1–00050.**

United States Court of International Trade.

Aug. 12, 1986.

Barnes, Richardson & Colburn (Rufus E. Jarman, Jr.), New York City, for plaintiffs.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Washington, D.C. (Velta A. Melnbrencis), New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

WATSON, Judge:

This action is brought by Boewe Maschinenfabrik, GmbH ("Boewe"), a West German manufacturer of drycleaning machinery, and American Permac, Inc. ("API"), Boewe's American distributor. The plaintiffs contest the final results of a periodic review of an antidumping finding, conducted by the United States Department of Commerce, International Trade Administration ("ITA") pursuant to Section 751(a) of the Tariff Act of 1930, 19 U.S.C. § 1675(a). 50 Fed.Reg. 1256 (Jan. 10, 1985). The ITA found that drycleaning machinery manu-

factured by Boewe and sold in the United States between July 1, 1979 and June 30, 1980 was dumped at a weighted average margin of 30.05 percent.[1]

■ Plaintiffs have moved for partial judgment upon the agency record, pursuant to Rule 56.1 of this court, contending that application of the ITA's January 10, 1985 determination to the entries covered by the review is barred by the four-year limitation on liquidations imposed under 19 U.S.C. § 1504(d). By that provision, any entry of merchandise not liquidated within four years after the date of entry or final withdrawal from warehouse shall be "deemed liquidated" at the amount of duty asserted at the time of entry by the importer "unless liquidation continues to be suspended as required by statute or court order." For the reasons set forth below, the court concludes that suspension of liquidation was required by statute so that § 1504(d) does not bar application of the challenged determination to the entries under review.[2]

## Background

The ITA review involved in this case arises from a 1972 antidumping finding by the Treasury Department under the Antidumping Act of 1921, 19 U.S.C. § 160 et seq. (1976). 37 Fed.Reg. 23715 (November 8, 1972). Because that finding remained in effect on January 1, 1980, the effective date of the Trade Agreements Act of 1979 ("1979 Act")[3], the amount of duties im-

1. The review covered one other West German manufacturer of dry cleaning machinery, Seco Maschinenbau, GmbH & Co., which has not contested the ITA's determination.

2. The defendant strenuously argues that the plaintiffs' failure to raise the limitation on liquidation issue at the administrative level constitutes a waiver and bars this court from considering the issue. In view of the court's holding on the merits, any nonexhaustion of administrative remedies by the plaintiffs is clearly immaterial. See Phillip Brothers, Inc. v. United States, 10 CIT ——, 630 F.Supp. 1317, 1324 n. 11 (1986). In addition, the court notes that the limitation issue did not arise (because the four year period under 19 U.S.C. § 1504(d) had not elapsed as to

any of the covered entries) until long after the comment period specified in the preliminary results (46 Fed.Reg. 60868, 60869) had passed. Because the ITA could have issued its final results at any time, it is unclear that plaintiffs had a definite opportunity to raise the issue. Cf., Id. at ——, 630 F.Supp. at 1324 (no exhaustion requirement where issue did not arise until ITA's final decision). Under the circumstances, the court finds imposition of an exhaustion requirement to be inappropriate. See 28 U.S.C. § 2637(d).

3. The Trade Agreements Act of 1979 repealed the Antidumping Act of 1921 and enacted a new antidumping law as part of Title VII of the Tariff Act of 1930. Pub. L. 96–39, Title I,

posed under the finding became subject to periodic review pursuant to 19 U.S.C. § 1675(a) (1982).[4] *See* 45 Fed.Reg. 20511 (March 28, 1980).

In its preliminary results, published December 14, 1981 (46 Fed.Reg. 60868), the ITA calculated the weighted average margin for the Boewe imports under review to be 65.95 percent. The high margin was due in part to the agency's denial of certain selling expense adjustments which it felt Boewe and API had not properly quantified in their questionnaire responses.

On February 8, 1982, the ITA conducted a hearing pursuant to 19 C.F.R. § 353.47. Subsequently, Boewe and API filed two submissions of additional data. The first, filed February 25, 1982, pertained to trade-in allowances in the German home market. The second, filed March 18, 1982, corrected certain errors Boewe and API had discovered in their prior submissions. The ITA initially deemed this new data to be untimely and refused to incorporate it into the final margin calculations. However, prior to issuance of a final determination, the West German Embassy contacted the Commerce Department expressing concern over certain aspects of the ITA's computations. West German representatives thereafter met with Commerce officials and requested delay in the publication of the final results to allow the West German government time to submit additional legal arguments. In January 1983, Commerce agreed to incorporate the February and March, 1982 submissions of Boewe and API in the final determination.

The ITA completed its final draft in the summer of 1983, finding a weighted average margin for Boewe entries of 31.03 percent. The proposed notice was approved on August 9, 1983 and forwarded to the Federal Register for publication on August 10. However, because the West German government sought further discussion on legal aspects of the review, the notice was recalled. Following a meeting with West German officials on August 24, 1983, the ITA decided not to publish the final results and to further review certain data. The final results which the ITA ultimately issued were signed by the Under Secretary of Commerce on January 3, 1985 and published on January 10, 1985. As noted above, the weighted average margin calcu-

§§ 101, 106(a), 93 Stat. 150–189, 193 (1979). Administration of the law was simultaneously transferred from Treasury to the Commerce Department.

**4.** 19 U.S.C. § 1675(a) (1982) provides, inpertinent part:

(1) In general. At least once during each 12–month period beginning on the anniversary of the date of publication of ... an antidumping duty order under this subtitle or a finding under the Antidumping Act, 1921, ... the administering authority, after publication of notice of such review in the Federal Register, shall—

\* \* \* \* \* \*

(B) review, and determine (in accordance with paragraph (2)), the amount of the antidumping duty,

\* \* \* \* \* \*

and shall publish the results of such review, together with notice of any duty to be assessed, estimated duty to be deposited, or investigation to be resumed in the Federal Register.

(2) Determination of antidumping duties. For the purpose of paragraph (1)(B), the administering authority shall determine—

(A) the foreign market value and United States price of each entry of merchandise subject to the antidumping duty order and included within that determination, and

(B) the amount, if any, by which the foreign market value of each such entry exceeds the United States price of the entry.

The administering authority, without revealing confidential information, shall publish notice of the results of the determination of antidumping duties in the Federal Register, and that determination shall be the basis for the assessment of antidumping duties on entries of the merchandise included within the determination and for deposits of estimated duties.

Although not applicable in this case, the Trade and Tariff Act of 1984 amended 19 U.S.C. § 1675(a)(1) by inserting the words "if a request for such a review has been received and" immediately before "after publication of notice." Pub. L. 98–573, Title VI, § 611(a)(2)(A), 98 Stat. 3031 (1984). Hence, where applicable, the amendment eliminates mandatory annual reviews and requires review only when the ITA has received a proper request. *See* Pub.L. 98–573, § 626(b)(1), 98 Stat. 3042 (effective date); 19 C.F.R. §§ 353.53a, 355.10 (1986) (implementing regulations).

lated for Boewe equipment was 30.05 percent.

## Discussion

■ "Liquidation" of an entry of merchandise is defined as the final computation by the Customs Service of all duties (including any antidumping or countervailing duties) accruing on that entry. *See generally Ambassador Division of Florsheim Shoes v. United States*, 748 F.2d 1560, 1562 (Fed.Cir.1984). Under 19 U.S.C. § 1504 (1982)[5], if Customs fails to liquidate entries within specified time limits, those entries are deemed liquidated at the rate of duty, value, quantity and amount of duties asserted at the time of entry by the importer, his consignee, or agent.[6] The general time limit on liquidation, imposed under § 1504(a), is one year from the date of entry or final withdrawal from warehouse. However, § 1504(b) permits Customs to extend that period, by providing notice to the importer, for any of the following reasons:

(1) information needed for the proper appraisement or classification of the merchandise is not available to the appropriate customs officers;

(2) liquidation is suspended as required by statute or court order; or

(3) the importer, consignee, or his agent requests such extension and shows good cause therefor.

Where liquidation of an entry is "suspended", notice to the importer and any authorized agent and surety is required under § 1504(c). Finally, under § 1504(d), any entry not liquidated at the expiration of four years from the date of entry or withdrawal from warehouse is deemed liquidated at the initially asserted amount of

duty "unless liquidation continues to be suspended as required by statute or court order."[7]

In this case, the ITA did not publish its review determination until over four years after the latest entry date covered by the review. Plaintiffs do not dispute that the pendency of the § 1675(a) review necessitated an extension of the liquidation period beyond the one-year deadline specified in § 1504(a). They contend, however, that there was no lawful basis for an extension or suspension beyond the four-year limit under § 1504(d). Plaintiffs assert that there was no statutory authority for a suspension beyond that limit; and since defendant failed to seek a court ordered suspension, the entries should have been deemed liquidated after four years.

Although apparently no court has addressed a challenge to an ITA review based on 19 U.S.C. § 1504(d), in *Ambassador Division of Florsheim Shoes v. United States, supra,* the Federal Circuit had occasion to interpret the terms of 19 U.S.C. § 1504(a) and (b) in connection with a challenge to a periodic review of a countervailing duty determination. The court therein upheld the ITA's authority to apply the final results of its review retrospectively to entries of merchandise covered by the review. The court found that authority in the language of § 1504(b)(1) and (2), which it concluded could be invoked to extend the period within which liquidation must occur beyond the one-year limit prescribed in § 1504(a). Such an extension could be based on § 1504(b)(1), inasmuch as information concerning liability for countervailing duties (which the court reasoned "could well be considered an item of 'classifica-

---

**5.** 19 U.S.C. § 1504 was enacted in the Customs Procedural Reform and Simplification Act of 1978, as Section 504 of the Tariff Act of 1930. Pub.L. 95–410, Title II, § 209(a), 92 Stat. 902 (1978).

**6.** The Trade and Tariff Act of 1984 amended 19 U.S.C. § 1504 by substituting references to "the importer, his consignee, or agent" with the term "importer of record." Pub.L. 98–573, § 191(d).

**7.** The full text of 19 U.S.C. § 1504(d) (1982) is as follows:

Any entry of merchandise not liquidated at the expiration of four years from the applicable date specified in subsection (a) of this section, shall be deemed liquidated at the rate of duty, value, quantity, and amount of duty asserted at the time of entry by the importer, his consignee, or agent, unless liquidation continues to be suspended as required by statute or court order. When such a suspension of liquidation is removed, the entry shall be liquidated within 90 days therefrom.

tion' ") was not available to Customs officers until the ITA had completed its review. 748 F.2d at 1563. The extension could also be based on § 1504(b)(2) because the administrative review scheme established in 19 U.S.C. § 1675(a) would be frustrated unless it created an implied statutory requirement that liquidation be suspended. *Id.* at 1563–65.

Applying the *Florsheim* analysis to this case, it is equally true that the defendant could invoke § 1504(b)(1) to extend the liquidation period beyond one year, since liability for antidumping duties is no less an "item of classification" than liability for countervailing duties. However, that ground for extension is not incorporated in § 1504(d), which sets the outside limit on extensions at three extra years. Consequently, the fact that Customs officials lack information necessary to assess antidumping duties due to the ITA's failure to complete its review would not, of itself, justify extending the liquidation deadline beyond four years.

The basis for extending the liquidation period found in § 1504(b)(2)—that "liquidation is suspended as required by statute" —is also satisfied in this case. In concluding that a periodic review of a countervailing duty determination triggers an implied statutorily required suspension of liquidation, the Federal Circuit in *Florsheim* focused on the "absurd consequences" of holding otherwise. That rationale is unnecessary where, as here, the administrative review is of an antidumping finding. Because 19 U.S.C. § 1675(a)(2) expressly calls for the retrospective application of antidumping review determinations (*see ante,* note 4), suspension of liquidation during the pendency of a periodic antidumping review is unquestionably "required by statute".

As previously noted, the suspension exception in § 1504(b)(2) is also incorporated in § 1504(d) as an exception to the four-year outside limit on liquidation. Accordingly, so long as suspension of liquidation continues to be required by statute (or court order), a suspension may continue

indefinitely. In this case, suspension of liquidation was required by virtue of § 1675(a)(2). Hence, the court must determine whether that suspension continued until the ITA completed its review on January 10, 1985, or whether any statutory time limit on agency action operated to terminate the suspension before that date. Plaintiffs have cited two limitations provisions in the antidumping statutes which are arguably pertinent.

The first and most obvious provision is the 12–month deadline for publication of periodic review results specified in 19 U.S.C. § 1675(a)(1). That deadline, of course, was well exceeded in this case. In *Phillip Brothers, Inc. v. United States,* 10 CIT ——, 630 F.Supp. 1317, 1323–24 (1986), this court rejected the contention that the statutory suspension of liquidation during a periodic review terminates when the ITA exceeds the 12–month deadline under § 1675(a)(1) so that the merchandise under review must be deemed liquidated pursuant to § 1504(a). The court noted that statutory time limits on administrative acts have generally been viewed as directory, rather than mandatory, where the statute does not specify adverse consequences for the agency's failure to meet the time limit. *E.g., Katunich v. Donovan,* 8 CIT 156, 160–62, 594 F.Supp. 744, 748–50 (1984); *Alberta Gas Chemicals, Inc. v. United States,* 1 CIT 312, 315–16, 515 F.Supp. 780, 785 (1981). Turning specifically to § 1675(a)(1), the court stated:

> [T]here is nothing in the statute or legislative history that compels the conclusion that the implied suspension automatically terminates at the close of the twelve-month period specified in [§ 1675(a)(1)]. Thus, in this situation the court is unable to impose a penalty of deemed liquidation for the delay.

10 CIT at ——, 630 F.Supp. at 1324.

Plaintiffs have made no attempt to distinguish *Phillip Brothers* other than to point out that the claim of "deemed liquidation" was based on § 1504(a) rather than § 1504(d). That fact would seem immaterial, since neither provision directs that en-

tries be deemed liquidated when liquidation is statutorily suspended. The only relevant question is whether the ITA's failure to meet the 12–month deadline under § 1675(a)(1) terminated the statutory suspension, and *Phillip Brothers* at least purported to hold that it did not.

One could argue, however, that although the court in *Phillip Brothers* only considered § 1504(b)(2) (i.e., liquidation is statutorily suspended) as a basis for extending the liquidation period beyond the one-year limit in § 1504(a), *Florsheim* established that an extension could also be based on § 1504(b)(1) (i.e., Customs officers lack necessary information). Hence, despite what the court said in *Phillip Brothers,* one could reach the same result by holding that the publication deadline under § 1675(a)(1) terminated the statutory suspension of liquidation, and thus the ground for extension in § 1504(b)(2), but not the ground in § 1504(b)(1) since Customs still lacked information needed to assess antidumping duties. However, because the statutory suspension would have terminated, there would be no basis for an extension past the four-year limit under § 1504(d).

One deficiency in this argument is its failure to elucidate *why* the § 1675(a)(1) deadline should extinguish the § 1504(b)(2) ground for extension but not the (b)(1) ground. If in fact the suspension of liquidation has expired, why shouldn't Customs simply assess antidumping duties in the "deemed liquidated" amount? (*See infra,* note 12). Furthermore, because nothing in the text or history of § 1675(a) shows that Congress intended to impose the penalty of deemed liquidation when a review is not completed after four years, the *reasoning* of *Phillip Brothers* would necessarily apply in this case.

It should also be emphasized that the *Phillip Brothers* holding does not leave private parties powerless to stop the ITA from exceeding the § 1675(a)(1) deadline by as long as it pleases. In the recent case of *Brock v. Pierce County,* —— U.S. ——, 106 S.Ct. 1834, 90 L.Ed.2d 248 (1986), the Supreme Court unanimously held that where the Labor Department failed to meet a comparable statutory deadline in issuing its final determination regarding misuse of CETA Funds by a grant recipient, the agency did not lose its power to recover those funds. The court stated:

> We would be most reluctant to conclude that every failure of an agency to observe a procedural requirement voids subsequent agency action, especially when important public rights are at stake. When, as here, there are less drastic remedies available for failure to meet a statutory deadline, courts should not assume that Congress intended for the agency to lose its power.

—— U.S. at ——, 106 S.Ct. at 1839. One "less drastic remedy" discussed by the Court is a judicial action to enforce the statutory deadline. *Id.* at n. 7. That remedy clearly would be available to participants in ITA review proceedings where the ITA exceeds the publication deadline, by virtue of this court's jurisdiction under 28 U.S.C. § 1581(i)(4).[8] *Cf., Allen v. Regan,* 9 CIT ——, 607 F.Supp. 133, 134 (1985) (action under § 1581(i)(4) to compel disposition on broker's license application after four-year delay).

The only other pertinent provision invoked by plaintiffs is 19 U.S.C. § 1673e(a)(1), which imposes deadlines on the Customs Service for the assessment of antidumping duties. That provision states:

> Within 7 days after being notified by the Commission of an affirmative determina-

8. 28 U.S.C. § 1581(i)(4) provides:
(i) In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)–(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its

agencies, or its officers, that arises out of any law of the United States providing for—

\*   \*   \*   \*   \*   \*

(4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section.

tion under section 1673d(b) of this title, the administering authority shall publish an antidumping duty order which—

(1) directs customs officers to assess an antidumping duty equal to the amount by which the foreign market value of the merchandise exceeds the United States price of the merchandise, within 6 months after the date on which the administering authority receives satisfactory information upon which the assessment may be based, but in no event later than—

(A) 12 months after the end of the annual accounting period of the manufacturer or exporter within which the merchandise is entered, or withdrawn from warehouse, for consumption, or

(B) in the case of merchandise not sold prior to its importation into the United States, 12 months after the end of the annual accounting period of the manufacturer or exporter within which it is sold in the United States to a person who is not the exporter of the merchandise.

The provision was enacted in the Trade Agreements Act of 1979 (about a year after the enactment of 19 U.S.C. § 1504) as part of the Tariff Act of 1930. Plaintiffs especially emphasize the following comments on § 1673e(a)(1) from the 1979 report of the Senate Finance Committee:

*Present law.*

\* \* \* \* \* \*

There are no time limits on assessments of special dumping duties under current law. However, under section 504 of the Tariff Act (19 U.S.C. 1504), liquidation of entries must generally occur within 1 year after the date of entry, with administrative extensions in certain circumstances for up to 3 years.

\* \* \* \* \* \*

*Reason for the provision.*—Section 736 [of the Tariff Act of 1930 (19 U.S.C. § 1673e)] would establish time limits on the assessment of antidumping duties, require cash deposits of estimated duties upon entry, and prescribe the entries to which antidumping duties may be ap-

plied. In establishing time limits on assessment, [§ 1673e] creates an affirmative obligation on the Customs Service. Although the requirement that estimated antidumping duty deposits be made as security pending liquidation should reduce the damage which delayed assessment may cause a domestic industry, the committee intends that antidumping duties be collected expeditiously. This will reduce the uncertainty which prevails during suspension of liquidation for both the importer and the domestic industry. In light of the dismal performance of the Department of the Treasury in assessing special dumping duties in the recent past, the committee considers this time limit to be an extremely important addition to the law.

S.Rep. No. 96–249, 96th Cong., 1st Sess. 75–77 (1979), U.S.Code Cong. & Admin. News 1979, pp. 381, 461–463.

Plaintiffs' position presumably is that the time limits on assessment under § 1673e(a)(1) have expired, which cancelled the suspension of liquidation; and that, in any event, the legislative history shows that Congress intended the 4–year limit on liquidation under 19 U.S.C. § 1504(d) to serve as the outside limit on all antidumping duty assessments.

As an initial matter, it is hardly clear that the time limits on assessment under § 1673e(a)(1) have in fact expired in this case. It could be argued that because the deadlines specified in sub-parts (A) and (B) of § 1673e(a)(1)—which clearly were exceeded—are preceded by the words "but in no event later than", Congress intended those deadlines to apply in all cases as outside limits on the assessment of antidumping duties. The context of those time limits within the statute, however, reveals that they apply to assessments of antidumping duties consequent to the ITA's publication of an antidumping duty order. Even assuming that those time limits were intended to apply to assessments of duties on merchandise subject to a § 1675(a) periodic review, the time limits would not reasonably come into play until after the ITA

has published the final results of its review. The obligation created by § 1673e(a)(1), as the above quoted legislative history underscores, is *upon the Customs Service* to collect antidumping duties "expeditiously." That obligation logically would not arise, and thus could not be breached, until the ITA has furnished Customs with the determination upon which assessments must be predicated. *See* 19 U.S.C. § 1675(a)(2).

But even were the court to assume that the deadlines on assessment in § 1673e(a)(1) properly applied despite the pendency of a periodic review, it would not follow that the consequence of exceeding those deadlines was termination of the statutory suspension of liquidation. Neither the terms of § 1673e(a)(1) nor the legislative history compels such a result. Although the Senate Finance Committee report strongly expressed the expectation that Customs comply with applicable time limits, it did not specify deemed liquidation as a penalty for non-compliance. Accordingly, under the reasoning of *Phillip Brothers,* the suspension of liquidation continued regardless of whether the assessment deadlines in § 1673e(a)(1) were exceeded. If plaintiffs felt they were prejudiced by the defendant's delay, their remedy was to bring an action to enforce the applicable statutory deadlines.

Finally, the court rejects plaintiffs' contention that the Senate report's reference to 19 U.S.C. § 1504 shows that Congress intended the four-year deadline in § 1504(d) to be the outside limit on the suspension of liquidation of entries covered by a periodic review. Significantly, the report mentions § 1504 only in its description of the law in effect prior to the 1979 Act. The construction of that prior law is not before the court [9] because the provisions of the 1979 Act govern assessments on all entries covered by this review. Indeed, because the effective dates of § 1504 and the 1979 Act operate to overlap [10], apparently no case will ever arise in which the assessment of dumping duties is governed by pre-1979 Act law (i.e., the Antidumping Act of 1921) as well as by the time limits on liquidation imposed under § 1504. At any rate, although it seems reasonable to read the Senate report as indicating that § 1504(d) *would have* imposed an outside deadline of four years on special dumping duty assessments under the Antidumping Act of 1921 (had it not been repealed), it does not follow that § 1504(d) imposes the same deadline on assessments under the current antidumping law. In addition to the considerations discussed above, a comparison of the assessment and review procedures under prior law with those established in the 1979 Act persuades the court that Congress in-

9. The legislative history of 19 U.S.C. § 1504 makes no specific mention of the provision's impact on antidumping duty assessments. *See* S.Rep. No. 95–778, 95th Cong., 2d Sess. 4, 31–32 (1978), H.R.Rep. No. 95–621, 95th Cong., 1st Sess. 24–26 (1977), U.S. Code Cong. & Admin. News, 1978, p. 2211. The House report gives only one example of a statutorily required suspension of liquidation, in connection with § 1504(b)(2), namely where "evidence that merchandise subject to an 'actual use' provision was in fact used for that prescribed purpose may be filed, pursuant to statute, up to three years after entry". *Id.,* at 25. *See* General Interpretive Rule 10(e), Tariff Schedules of the United States.

The Senate report, on the other hand, offers no explanation of the specific grounds for extending the liquidation period, but states generally that § 1504 would eliminate "unanticipated requests by Customs, many years after importation, for additional duties which often result in substantial losses to importers because they

were unable to anticipate such duties when pricing their products." S.Rep. No. 95–778, at 4, U.S. Code Cong. & Admin. News 1978, p. 2215.

10. 19 U.S.C. § 1504 applies to merchandise entered or withdrawn for consumption at least 180 days after the enactment date, October 3, 1978. Pub.L. 95–410, Title II, § 209(b), 92 Stat. 903 (1978). The provisions of the 1979 Act, on the other hand, apply to "the assessment is made after [January 1, 1980]." Pub.L. 96–39, Title X, § 1002(b)(3), 93 Stat. 307 (1979). The ITA indicated in the notice of its intent to conduct administrative reviews of Treasury antidumping findings, published March 28, 1980, that in each case the first review would cover "all entries with dates of purchase or export, as appropriate, occurring subsequent to the period covered by the last published master list, or, as a minimum, the last 12–month period." 45 Fed. Reg. at 20512.

tended the suspension of liquidation required during § 1675 reviews to override the "deemed liquidated" provisions of § 1504.

The Antidumping Act did not provide for special duty assessments pursuant to periodic administrative reviews. Rather, Customs officers assessed duties upon entries subject to a prior Treasury finding by conducting and comparing appraisals of the foreign market value and the purchase price or exporter's sales price for specific entries. 19 U.S.C. § 168 (1976). Importers could challenge antidumping findings and assessments of special dumping duties only by means of the protest procedures applicable to challenges of ordinary duty assessments. 19 U.S.C. § 169 (1976). Thus, an importer was required to wait until an entry was liquidated and then file a protest pursuant to 19 U.S.C. § 1514 (1976). If the protest was denied as provided in 19 U.S.C. § 1515 (1976), the importer could challenge that denial in an action in the Customs Court pursuant to 28 U.S.C. § 1582(a) (1976).[11]

If the Antidumping Act had not been repealed shortly after 19 U.S.C. § 1504 took effect, then entries subject to an antidumping finding which were not liquidated within four years presumably would have been "deemed liquidated" at the amount of duties asserted at the time of entry by the importer, in accordance with § 1504(d).[12] Under the Antidumping Act, Treasury usually required the importer to post a bond pending liquidation of entries subject to an antidumping finding covering the amount of estimated special dumping duties, pursuant to 19 U.S.C. § 1623 (1976). *See* S.Rep. No. 96–249, at 75. Hence, if such entries were "deemed liquidated", the dumping duties assessed would have been the amount of the bond covering estimated

dumping duties on those entries. Thereafter, if the importer felt that the amount was excessive or that dumping duties should not have been assessed, he could challenge the assessment by filing a protest. Customs officers would then have up to two years to review the protest (during which time they undoubtedly would conduct a proper appraisal of the merchandise). If the protest was denied, in whole or in part, the importer would be entitled to a trial *de novo* in the Customs Court.

In short, importer challenges to assessments on "deemed liquidated" entries under the Antidumping Act would have, fairly and straightforwardly, involved the same procedures used for challenges to dumping duty assessments on appraised entries and for challenges to normal customs duty assessments.

Under the 1979 Act, by contrast, antidumping duties are assessed upon entries subject to a prior order or finding based upon the results of periodic agency reviews. 19 U.S.C. § 1675(a) (1982). As discussed above, the retroactive effect of such reviews requires that liquidation of the covered entries be suspended while the review is pending.

In addition, the use of protest procedures for importer challenges to administrative determinations and special duty assessments under the Antidumping Act has been eliminated. The 1979 Act establishes a uniform procedure in which any "interested party" who has participated in an administrative proceeding (such as a periodic review by the ITA) may directly challenge the agency's final determination by bringing an action for review upon the agency record in the Court of International Trade. 19 U.S.C. §§ 1514(b), 1516a (1982); 28 U.S.C. § 1581(c) (1982). In explaining this

---

**11.** Under pre–1979 Act law, parties representing domestic interests had a right of action only to challenge either the non-assessment of dumping duties or a negative antidumping determination, following procedures prescribed in 19 U.S.C. § 1516 (1976).

**12.** The amount of duties "asserted at the time of entry by the importer", within the meaning of

§ 1504(a) and (d), is not what the importer *desires* to assert upon entry, but what the importer is *required by Customs officers* to assert when filing the entry summary. *See* 19 C.F.R. §§ 159.11(a) and 159.12(f); *Detroit Zoological Society v. United States,* 10 CIT ——, 630 F.Supp. 1350, 1355 n. 9 (1986).

new review procedure under the 1979 Act, the Senate Finance Committee stated:

> Subsection (a) of new [19 U.S.C. § 1516a] provides a list of the types of antidumping and countervailing determinations which will now be reviewable. This increase in the number of determinations subject to judicial review in the Customs Court is intended to provide greater procedural safeguards than exist under current law and to expedite the obtaining of judicial relief. . . .
>
> Under current law, no suit can be instituted by an importer or by an American manufacturer, producer, or wholesaler under [19 U.S.C. § 1516(a)–(c) (1976)] until at least one entry has been liquidated. This requirement that at least one entry be liquidated can result in the denial of effective relief in some instances. . . .
>
> Under [19 U.S.C. § 1516a] any person with standing in an antidumping or countervailing duty case can challenge a determination in the Customs Court within 30 days of notice of the determination. There is no need for administrative review by the authority or the Commission. . . . The bill thus represents a significant improvement over present law both in terms of shortening the overall review process and eliminating the disparity in review procedures provided to importers and domestic interested parties. . . .
>
> *For importers, this fact will result in a significant change of procedure.* Under current law, an importer may challenge the imposition of a countervailing or antidumping duty only with respect to those entries of his which have been assessed with a duty of this nature. *Pursuant to [§ 1516a], the importer's right to challenge the assessment of a countervailing and antidumping duty is contained exclusively in [§ 1516a] and the importer will be required to challenge the assessment of an antidumping or countervailing duty when the final finding or order is published or when periodic announcement of the amount to be assessed is published pursuant to [19 U.S.C. § 1675].*

S.Rep. No. 96–249, at 250–51 (1979), U.S. Code Cong. & Admin.News 1979, pp. 636–637 (emphasis added). The plain implication of these comments is that Congress eliminated the use of protests and made § 1516a challenges to agency determinations the exclusive remedy for parties wishing to contest the basis of antidumping duty assessments, not because it wished to curtail the availability of judicial review of those assessments, but because it contemplated that antidumping duties would be assessed *only* pursuant to reviewable agency determinations.

Because present law mandates that importers deposit estimated antidumping duties on entries subject to an antidumping duty order, *see* 19 U.S.C. § 1673e(a)(3), if entries under periodic review could be "deemed liquidated", as plaintiffs contend, antidumping duty assessments on those entries would be in the amount of the deposits. The question then would arise: how might a party who is dissatisfied with the amount of such assessments go about challenging them? Because the assessments would not stem from a new agency determination, they could not be challenged in a § 1516a action and this court would not have jurisdiction under 28 U.S.C. § 1581(c).

Arguably, perhaps, a "constructive determination" could be recognized, consisting of the previous final determination (upon which the required deposits were based) as applied to those entries deemed liquidated. It is unclear, however, when the limitation period for filing such an action would commence (since no determination was "published"), or what the "agency record" would consist of. Perhaps jurisdiction could be found under 28 U.S.C. § 1581(i)(4), but the parameters of such an action would also be uncertain. The complexity of the situation would be compounded if the ITA were to publish the results of its review after a *portion*, but not all, of the covered entries were "deemed liquidated" at the amount of estimated duty deposits. Finally, because the ITA must rely on current information for a review determination to be lawful, *see Freeport Minerals v. United*

*States,* 776 F.2d 1029 (Fed.Cir.1985); *Timken Co. v. United States,* 10 CIT ——, 630 F.Supp. 1327, 1332–34 (1986), any recognized action challenging the basis of dumping assessments on entries deemed liquidated would necessarily result in a remand to the ITA for a determination using data attributable to those entries. Hence, the end result would be no different than if the suspension of liquidation had continued until the ITA completed its review. Although the court could impose time limits upon the ITA for compliance with the order of remand, the same degree of judicial control could sooner be obtained in an action to enforce the statutory deadlines, discussed previously.[13]

The court has engaged in the above speculation merely to demonstrate that plaintiffs' reading of the new law in relation to § 1504, if not "absurd", is at least "highly implausible". The court cannot believe that Congress tacitly envisioned such a construction. The "deemed liquidated" penalty of § 1504 operates irrationally, and if applied in an antidumping context could lead to particularly inequitable assessments, since the amount of deposited duties may bear little relation to actual dumping margins.[14] In that situation it would seem especially critical that parties be guaranteed an adequate means to challenge the basis of the assessments. The scheme for judicial review of agency determinations under the new law, if applicable at all, is ill-suited to that purpose. Congress' failure to address this difficulty, coupled with its clearly expressed expectation that periodic review determinations would provide the basis for antidumping duty assessments on covered entries, persuades the court that Congress intended the statutory suspension of liquidation during a periodic review to override the possibility of deemed liquidation under § 1504(d).

The court, of course, does not condone the ITA's failure to meet its statutory time limits. However, the availability of an action to enforce those time limits accords adequate protection to parties who are truly aggrieved by undue agency delays.

Because the court holds that the statutorily required suspension of liquidation continued until the ITA published the final results of its review, it is ORDERED that plaintiffs' motion for partial judgment upon the agency record is hereby denied.

---

**13.** Congress facilitated this court's ability to enforce such deadlines with the grant of full equitable powers in the Customs Court Act of 1980. *See* 28 U.S.C. §§ 1585, 2643(c)(1) (1982).

**14.** It is unclear from the record whether Customs required deposits of estimated dumping duties on all or any of the entries covered in this review, but the court presumes that plaintiffs would escape considerable potential liability if the entries were deemed liquidated. *See* Defendant's brief, at 41–42. The resulting windfall to plaintiffs would penalize not only the defendant, by depriving it of revenues, but also plaintiffs' domestic competitors (who played no part in the defendant's delay), by depriving them of the protection of the antidumping law. The inequity in this case would be especially egregious, since the ITA's delay was occasioned principally to facilitate the late intervention of the West German government on plaintiffs' behalf. It is doubtful that plaintiffs actually felt prejudiced by this delay which, indeed, resulted in substantial reductions in the ITA's margin calculations.

Of course, "deemed liquidation" could equally operate to unfairly penalize an importer, if the assessed deposits of estimated duties were greater than actual dumping margins.