Slip Op. 10-86

UNITED STATES COURT OF INTERNATIONAL TRADE

```
_____
                               :
CLEARON CORPORATION and        :
OCCIDENTAL CHEMICAL            :
CORPORATION,                   :
                               :
             Plaintiffs,       :  Before: Richard K. Eaton, Judge
        v.                     :
                               :  Court No. 08-00364
UNITED STATES,                 :
                               :
             Defendant,        :
        and                    :
                               :
ARCH CHEMICALS, INC. and HEBEI :
JIHENG CHEMICAL CO., LTD.,     :
                               :
        Defendant-Intervenors.:
                               :
_____:
```

OPINION AND ORDER

[Defendant's motion to dismiss denied.]

Dated: August 9, 2010

*Gibson, Dunn & Crutcher LLP* (*Daniel J. Plaine*, *J. Christopher Wood*, and *Andrea F. Farr*) for plaintiffs.

*Tony West*, Assistant Attorney General; *Jeanne E. Davidson*, Director, *Franklin E. White*, *Jr.*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*David D'Alessandris*); Office of the Chief Counsel for Import Administration, United States Department of Commerce (*Brian Soiset*), for defendant.

Eaton, Judge: This case is before the court on a motion to dismiss, pursuant to USCIT Rule 12(b)(1), of defendant the United States, acting on behalf of the United States Department of

Commerce ("Commerce").  Defendant's motion seeks the dismissal of Count 3 of plaintiffs' complaint in its entirety, and the dismissal of Counts 1 and 2 as they pertain to Hebei Jiheng Chemical Corporation ("Jiheng").  Def.'s Mot. to Dismiss in Part as Moot ("Def.'s Mot.") 1.  If Commerce's motion is granted, Jiheng will be dismissed from the case.

By their complaint, Clearon Corporation and Occidental Chemical Corporation (collectively, "plaintiffs" or "Clearon") contest certain aspects of Commerce's final results in the second administrative review of the antidumping duty order on chlorinated isocyanurates covering the period June 1, 2006 through May 31, 2007.  Compl. ¶ 3; *see also* Chlorinated Isocyanurates from the People's Republic of China, 73 Fed. Reg. 62,249 (Dep't of Commerce Oct. 20, 2008) (amended final results of antidumping duty administrative review)(the "Final Results"). Plaintiffs are domestic producers of chlorinated isocyanurates seeking to increase Jiheng's dumping margins found in the Final Results.  *See* Compl. ¶ 5.

The basis for defendant's motion is that the portions of the complaint involving Jiheng's merchandise have been rendered moot because the merchandise was liquidated by operation of law in accordance with 19 U.S.C. § 1504(d) (2006), commonly referred to as the deemed liquidation provision.  Def.'s Mot. 1.  According to defendant, plaintiffs' failure to serve their injunction on

named government officials at Commerce and United States Customs
and Border Protection ("Customs" or "CBP") rendered the
injunction order incapable of preventing a deemed liquidation.
Def.'s Mot. 3.  For the reasons set forth below, defendant's
motion to dismiss is denied.


                              BACKGROUND

     On June 24, 2005, following an investigation, Commerce
published an antidumping duty order on chlorinated isocyanurates.
Chlorinated Isocyanurates from the People's Republic of China, 70
Fed. Reg. 36,561 (Dep't of Commerce June 24, 2005) (notice of
antidumping duty order)(the "Order").  On July 26, 2007, at the
request of certain foreign producers, exporters, and domestic
producer Clearon, Commerce commenced the second periodic review
of the Order pursuant to 19 U.S.C. § 1675(a)(1) and 19 CFR
§ 351.213(b).  Initiation of Antidumping and Countervailing Duty
Administrative Reviews and Request for Revocation in Part, 72
Fed. Reg. 41,057 (Dep't of Commerce July 25, 2007).  On September
10, 2008, Commerce published the final results of the review,
later amended on October 20, 2008.  Chlorinated Isocyanurates
from the People's Republic of China, 73 Fed. Reg. 52,645 (Dep't
of Commerce Sept. 10, 2008); Final Results, 73 Fed. Reg. at
62,249.  Importantly, as a result of this publication, the
suspension of liquidation that had previously been in effect as a

result of the review was lifted.  *See*, *e.g.*, *Int'l Trading Co. v. United States*, 281 F.3d 1268, 1272 (2002) ("*Int'l Trading*") (holding that "[t]he statutory scheme governing suspension of liquidation supports the . . . conclusion that suspension of liquidation [is] removed when the final results of the administrative review [are] published in the Federal Register").

Following publication of the Final Results, Clearon commenced this lawsuit to contest the results of the review.  On November 12, 2008, Clearon, with defendant's consent, sought an injunction against liquidation, and on November 13, 2008, the court granted the injunction.  Def.'s Mot. 2; *Clearon Corp. v. United States*, Court No. 08-00364, at 1-2 (Nov. 13, 2008) (injunction order) (the "Injunction").  Among other things, the Injunction provided that it would enjoin liquidation of plaintiffs' merchandise that remained:

> unliquidated as of 5:00 p.m. on the fifth business day after the day on which a copy of this preliminary injunction *is personally served by Plaintiffs' counsel by hand on the following individuals or their delegates*:
>
> Attn: Ann Sebastian, APO Director,
> U.S. Department of Commerce, Room 1870
> International Trade Administration, Import Administration,
> 14th Street and Constitution Avenue, N.W.,
> Washington, DC 20230; and
>
> Hon. W. Ralph Basham, Commissioner of Customs,
>    Attn: Alfonso Robles, Esq., Chief Counsel,
> U.S. Bureau of Customs and Border Protection,
> Room 4.4-B,
> 1300 Pennsylvania Avenue, N.W.,

Washington, DC 20229

Injunction at 1-2 (emphasis added).  While the Injunction was served on defendant's counsel, it was never served on either of the named officials.  Def.'s Mot. 3.

The case then proceeded in the usual fashion until December 14, 2009 when defendant filed its motion to dismiss, claiming that all of Jiheng's merchandise subject to the second administrative review had been deemed liquidated pursuant to 19 U.S.C. § 1504(d), and as a result, the court had no jurisdiction to hear unfair trade duty claims related to the Company's merchandise.  Def.'s Mot. 4.

## STANDARD OF REVIEW

"The party seeking to invoke this Court's jurisdiction has the burden of establishing such jurisdiction."  *Autoalliance Int'l, Inc. v. United States*, 29 CIT 1082, 1088, 398 F. Supp. 2d 1326, 1332 (2005) (citations omitted).  A case becomes moot when it has "lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law."  *Hall v. Beals*, 396 U.S. 45, 48 (1969) (citations omitted).  This requirement of an actual controversy exists at all stages of an action.  *Steffel v. Thompson*, 415 U.S. 452, 461 n.10 (1974).

DISCUSSION

I.   Contentions of the Parties

Defendant's primary argument is that because plaintiffs failed to serve the Injunction on Ms. Sebastian at Commerce and Mr. Basham at Customs, the document did not effect a suspension of liquidation that would prevent a deemed liquidation.  Def.'s Mot. 3.  Defendant further insists that, by operation of law, deemed liquidation of Jiheng's merchandise occurred on April 20, 2009.  Def.'s Mot. 3.  According to defendant, this deemed liquidation mooted Clearon's case as to Jiheng's merchandise, thus denying the court subject-matter jurisdiction to hear the substantive claims with respect to that merchandise.  Def.'s Mot. 4.  Thus, defendant argues that:

> The clear terms of the injunction state that the injunction will take effect "on the fifth business day after the day on which a copy of this preliminary injunction is personally served by Plaintiffs' counsel by hand" on Commerce. The injunction was not served, personally or otherwise, upon Commerce and CBP [Customs]. Thus, nothing enjoined the lifting of the suspension of liquidation during the nearly 14 months since publication of the *Amended Final Results* . . . .
>
> In this case, the removal of suspension of liquidation, as well as notice to CBP of that removal, occurred when the *Amended Final Results* were published in the Federal Register on October 20, 2008. Thus, the entries at issue in this case became liquidated by operation of law on April 20, 2009.

Def.'s Mot. 6-7 (citations omitted).

Clearon, on the other hand, insists that the motion should

be denied, primarily because:

> [T]he absence of any prejudice to Defendant or
> any other party from the alleged service
> defect places this case squarely within the
> ambit of the harmless error rule. . . . Under
> these circumstances, the Court should give
> effect to the clear intent and agreement of
> the parties and the order of this Court that
> the entries subject to the appeal would be
> enjoined and deny Defendant's motion to
> partially dismiss Plaintiffs' claims as moot.

Memo. of Clearon Corp. and Occidental Chem. Corp. in Opp. to

Def.'s Part. Mot. to Dismiss ("Pls.' Resp.") 2.

II.  Suspension of Liquidation and Injunction

Suspensions of liquidation and court-ordered injunctions are

important tools used in the statutory scheme providing for the

application of the proper duties under our unfair trade regime.[1]

---

[1]    The United States uses a "retrospective" assessment
system where the importer makes a cash deposit of the estimated
dumping duties when the subject merchandise enters the United
States, but the actual duty is not necessarily determined until
after entry, and is not paid until the entries are liquidated by
Customs.  19 C.F.R. § 351.212(a) (2009); 19 C.F.R. §§ 141.101,
103.  If no request for a review is made, Commerce instructs
Customs to liquidate the entries at the estimated antidumping
duties at the time of entry (the "entered rate").  19 C.F.R.
§ 351.212(c)(i).  If a timely request for review is made,
Commerce publishes the notice of initiation of the review in the
Federal Register and commences the review, during which time
liquidation is suspended.  19 C.F.R. § 351.212(c)(2); 19 C.F.R.
§ 351.221(b); see also American Permac, Inc. v. United States, 10
CIT 535, 539, 642 F. Supp. 1187, 1191 (1986) ("Because 19 U.S.C.
§ 1675(a)(2) expressly calls for the retrospective application of
antidumping review determinations . . . suspension of liquidation
during the pendency of a periodic antidumping review is

The suspension of liquidation is terminated, however, when final results of an investigation are published in the Federal Register so that Customs may liquidate the merchandise at the final rate. *Int'l Trading*, 281 F.3d at 1272; *see also* 19 U.S.C. § 1673e(a)(providing that an antidumping duty order should set forth the antidumping duty rate).  Often, however, a party will request a periodic review to test the applicability of the rate to entered merchandise.  *See* 19 U.S.C. § 1675(a)(2)(c) (providing that the final results of an administrative review should set forth the determination of antidumping duty rates that "shall be the basis for the assessment of countervailing or antidumping duties" on the subject entries).  Liquidation is suspended during the review so the liquidation will take place in accordance with a review's result.  *See* 19 U.S.C. § 1673b(d)(2).

When the results of a review are challenged in this Court, a party will typically seek to further halt liquidation by requesting an injunction.  19 U.S.C. § 1516a(c)(2) ("The United States Court of International Trade may enjoin the liquidation of some or all entries of merchandise covered by a determination of the . . . administering authority . . . upon a request by an interested party for such relief and a proper showing that the

unquestionably 'required by statute[].'").  Following the review, Commerce publishes the final results of the review, and the entries are liquidated in accordance with those final results, unless there is an appeal to this Court.  19 C.F.R. § 351.221(b).

requested relief should be granted under the circumstances."). The purpose of the injunction is to prevent liquidation and to preserve merchandise for liquidation at the rate finally determined following judicial review.

Were an injunction not entered, Customs would be free to actually liquidate the merchandise pursuant to 19 U.S.C. § 1500(c)-(d), which provides that the "Customs Service shall . . . fix the final amount of duty to be paid on such merchandise . . . [and] liquidate the entry . . . of such merchandise . . . ."

III. Deemed Liquidation

If no injunction is entered and Customs does not act, however, another provision comes into play. By statute, entries of merchandise not liquidated by Customs within six months of the removal of suspension of liquidation are deemed liquidated at the entered rate:

> Any entry (other than an entry with respect to which liquidation has been extended under subsection (b) [relating to an extension of the six month period by the Secretary of Commerce] of this section) not liquidated by the Customs Service within 6 months after receiving such notice shall be treated as having been liquidated at the rate of duty, value, quantity, and amount of duty asserted by the importer of record . . . .

19 U.S.C. § 1504(d).

Thus, for a deemed liquidation to take place, three conditions must be met: "(1) the suspension of liquidation that

was in place must have been removed; (2) Customs must have received notice of the removal of the suspension; and (3) Customs must not liquidate the entry at issue within six months of receiving such notice." *Fujitsu Gen. Am., Inc. v. United States*, 283 F.3d 1364, 1376 (Fed. Cir. 2002) ("*Fujitsu*"). Because they take place by operation of law, Customs plays no role in effectuating deemed liquidations.

IV.  Mootness

The "mootness doctrine" results from the case or controversy requirement found in Article III of the United States Constitution. *See* 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3533 (3d ed. 2008). In the context of an unfair trade case, courts have generally found that once entries have been liquidated, there is no case or controversy with respect to the duty rate to be applied to them. As a result, liquidation moots a court challenge to the duty rate imposed in an administrative review. "Once liquidation occurs, it permanently deprives a party of the opportunity to contest Commerce's results for the administrative review by rendering the party's cause of action moot." *SKF USA Inc. v. United States*, 28 CIT 170, 173, 316 F. Supp. 2d 1322, 1327 (2004) (citing *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809-10 (Fed. Cir. 1983) ("*Zenith*")); *see also Fujitsu*, 283

F.3d at 1376.  This applies to entries deemed liquidated by operation of 19 U.S.C. § 1504(d).  *Ames True Temper v. United States*, 34 CIT __, __, __ F. Supp. 2d __, __, Slip Op. 10-33 at 6 (Mar. 30, 2010) (citation omitted).

## V.    Special Provision of CIT Injunctions

Consent injunctions in the Court of International Trade generally contain two special provisions not normally found in other injunction orders.  In ordinary practice, it is the duty of the lawyer for the party being enjoined to inform those who might violate the injunction of its existence, e.g., officers of a corporation.  *See, e.g.*, USCIT Rule 65(d)(2) (stating that an injunction binds various categories of individuals working for or with the parties "who receive actual notice of it by personal service or otherwise"); *Anthony Marano Co. v. MS-Grand Bridgeview, Inc.*, No. 08 C 4244, 2009 WL 1904403, at *3 (N.D. Ill. July 1, 2009) (providing that the enjoined party, whose employees violated a preliminary injunction, cannot claim that the "notice of the injunction 'was not fully transmitted' to all of [its employees]" when its counsel has been notified of the injunction).

Starting sometime after *Zenith*,[2] however, it became common

---

[2]    This case, which is generally the initial point of reference for cases dealing with injunctions in the context of unfair trade laws, held that liquidation of entries of

in this Court for a consent injunction to contain language requiring the party that obtained the injunction to serve it on officers of the United States government.  The agreed upon reason for this service was to give actual notice sufficient to prevent Commerce and Customs from taking any inadvertent action to actually liquidate the subject merchandise while the injunction was in force.  Pls.' Resp. 5.  At oral argument, defendant's counsel explained that because these agencies are large, the correct person must be served to ensure proper compliance with an injunction.  Tr. of Civ. Cause for Or. Arg. at 6:1-7.

The other special provision often found in consent injunctions in this Court is the five-day grace period.  In accordance with this provision, a consent injunction does not become effective until "the fifth business day after the day on which a copy of [the] preliminary injunction is personally served by Plaintiffs' counsel by hand" on the specified individuals at Commerce and Customs.  *See, e.g.*, Injunction at 1.  This provision has recently been the subject of litigation.  *See Agro*

---

merchandise subject to administrative review renders court challenges moot, and therefore, a domestic manufacturer challenging the result of the review would suffer irreparable harm if liquidation were not enjoined.  *Zenith*, 710 F.2d at 810. Hence, the court established a "per se right to a preliminary injunction enjoining liquidation of unliquidated entries pending final judicial review of administrative review determinations." *NMB Sing. Ltd. v. United States*, 24 CIT 1239, 1242 n.4, 120 F. Supp. 2d 1135, 1138 n.4 (2000) (citing *Zenith*).

*Dutch Indus. Ltd. v. United States*, 589 F.3d 1187, 1189 (Fed. Cir. 2009) ("*Agro Dutch*").

VI.   *Agro Dutch*

In *Agro Dutch*, this Court granted a consent injunction that included the five-day grace period.  Thus, in accordance with its terms, the injunction would not take effect until five days after it was served on the specified individuals at Commerce and Customs.  589 F.3d at 1189.  The Federal Circuit noted that the purpose of the grace period was "to ensure against subjecting Customs officials to contempt sanctions for an inadvertent liquidation."  *Id.* at 1193.  The *Agro Dutch* injunction was served on the named officials.  *Id.* at 1189.  Customs, however, liquidated the entries during the five-day grace period.  *Id.*

Because Commerce acted to liquidate during the grace period, nothing in the terms of the injunction prevented the liquidation from taking place.  Nonetheless, both this Court and the Federal Circuit found that the "original understanding and intent of the court and the parties" that the entries be preserved for liquidation at the final rate overrode the lesser intention that there should be a safe harbor period.  *Id.* at 1192, 1194.  The Federal Circuit emphasized the importance of "effecting the intent of the parties and the court to prevent a premature liquidation while judicial review is ongoing."  *Id.* at 1193-94.

In reaching its decision, the *Agro Dutch* court stressed the equitable power of a Court of International Trade judge and the importance of complying with the parties' original intent:

> The trial court's discretion is not limited to the correction of clerical or typographical errors but encompasses the correction of errors needed to comport the order with the original understandings and intent of the court and the parties.
>
>     . . . [I]t was the purpose of the injunction and the understanding and intent of all the parties to suspend liquidation pending a decision on the merits of [plaintiff's] challenge. . . .
>
>                 . . . .
>
>     While finality is an important goal, the interest in finality must give way in the face of a more compelling interest in this case: namely, effecting the intent of the parties and the court to prevent a premature liquidation while judicial review is ongoing. . . . No valid interest in finality is served by foreclosing judicial review in a case such as this one, where the parties and trial court agreed that finality was not warranted, and where an injunction was entered for the very purpose of preventing the antidumping duty from becoming final.

*Id.* at 1192-94.


VII. The Injunction Was In Effect at the Time of Deemed
     Liquidation

Here, the Injunction was entered by this Court on November 13, 2008, and Customs claims that deemed liquidation took place on April 20, 2009.  Def.'s Mot. 2-3.  As in *Agro Dutch*, the

parties agreed to a special term in the Injunction, i.e., the requirement that Clearon serve Commerce and Customs. As noted, the purpose of this service was to reduce the chance of these entities' taking action to liquidate the subject merchandise. It is important to keep in mind, however, that the notice resulting from service on the named officials was designed to prevent either Commerce or Customs from taking any action that would result in an actual liquidation. No party claims, nor could it, that this service would put either agency on notice with respect to any action it might take to effectuate a deemed liquidation. This is because, as has been seen, a deemed liquidation is the result of the operation of law upon the satisfaction of several conditions. *Fujitsu*, 283 F.3d at 1376. Under the circumstances of the case, neither Commerce nor Customs was empowered to act in any way in furtherance of a deemed liquidation. An examination of the preconditions for a deemed liquidation will serve to illustrate why this is the case.

The first condition is that the "suspension required by statute or court order is removed." 19 U.S.C. § 1504(d). As noted, this lifting of the suspension of liquidation took place when Commerce published the Final Results. *See Int'l Trading*, 281 F.3d at 1272. In other words, the only action that Commerce is authorized to take leading up to a deemed liquidation took place here, and always takes place, prior to a party's seeking an

injunction against liquidation in this Court.  Thus, the service of the Injunction on Commerce, as provided for in the document, had no meaning under these circumstances, because Commerce was powerless to take further action that would result in a deemed liquidation.  Likewise, Customs could take no act nor make any finding to further a deemed liquidation because it had no power to do so.  Thus, with respect to a deemed liquidation, the service requirement at issue here merely demands a meaningless act.

With this in mind, the court finds that the holding in *Agro Dutch* directs the outcome of this case.  Indeed, as compelling as the case was in *Agro Dutch* for reforming the injunction order to eliminate the five-day grace period, here, the case for dispensing with the service requirement is even more compelling. In *Agro Dutch,* the five-day provision was designed to address precisely the set of facts that actually came to pass—that is, the liquidation of merchandise during the grace period.  589 F.3d at 1189.  As has been noted, the provision at issue in *Agro Dutch* specifically placed no bar on actual liquidation during the five-day period.  *Id.*  In other words, the parties agreed, and the court ordered, that a liquidation during this period would remain undisturbed.  Nonetheless, the Federal Circuit found that it was the primary "intent of the parties and the court to prevent a premature liquidation while judicial review is ongoing" and

therefore, authorized the court to use its equitable powers to eliminate the grace period provision. *Id.* at 1193-94.

Here, the service provisions were designed to provide notice sufficient to stop the served agencies from inadvertently taking steps to liquidate the entries of subject merchandise while the injunction was in effect. Pls.' Resp. 5. It is important to keep in mind, however, that an actual liquidation, not a deemed liquidation, was the object of the provision. As has been seen, in this case, neither served official could take lawful action to effectuate a deemed liquidation. Thus, the service provision served no purpose with respect to preventing a deemed liquidation.

Thus, as in *Agro Dutch*, the primary intention of the parties was to stop, during the pendency of the lawsuit, a liquidation, deemed or otherwise. As such, the court is required to give meaning to the parties' primary intention that no liquidation should take place, and use its equitable powers to eliminate the notice provision. *See Agro Dutch*, 589 F.3d at 1192 (providing that "[t]he trial court's discretion is not limited to the correction of clerical or typographical errors but encompasses the correction of errors needed to comport the order with the original understandings and intent of the court and the parties").

CONCLUSION

For the foregoing reasons, the court denies the defendant's motion to dismiss.  Further, the court amends the Injunction to eliminate the service requirement and thus, finds that the Injunction served to suspend the liquidation of Jiheng's merchandise by action of law pursuant to 19 U.S.C. § 1516a(c)(2).  As a result, Counts 1 and 2 of Clearon's complaint as they pertain to Jiheng's merchandise and Count 3 in its entirety are not moot.

/s/ Richard K. Eaton

Richard K. Eaton

Dated:  August 9, 2010
        New York, New York

<u>Errata</u>

*Clearon Corp. v. United States*, Court No. 08-00364, Slip Op. 10-86 (Aug. 9, 2010)

| | |
|---|---|
| Page 2, line 19: | Insert "its contention" between "is" and "that". |
| Page 4, line 15: | Replace "plaintiffs'" with "Jiheng's". |
| Page 6, lines 5-6: | Remove "effect a suspension of liquidation that would prevent" and replace with "enjoin". |
| Page 7, line 15: | Add an "s" to the end of "Suspension" and "Injunction". |
| Page 7, footnote 1, line 14: | Replace "*American*" with "*Am.*". |
| Page 11, line 5: | Add an "s" to the end of "Provision"; replace "of" with "in". |
| Page 17, line 6: | Capitalize the first letter of "injunction". |
| Page 18, line 5: | Replace "suspend" with "prevent". |