**AMERICAN PERMAC, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 88-02-00072.

United States Court of
International Trade.

Aug. 11, 1992.

Barnes, Richardson & Colburn, Rufus E. Jarman, Jr., Sandra Liss Friedman, and Frederic D. Van Arnam, Jr., New York City, for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., Joseph I. Liebman, Attorney-in-Charge, Intern. Trade Field Office, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice, James A. Curley, of counsel: Edward N. Maurer, Office of Asst. Chief Counsel, Intern. Trade Litigation, U.S. Customs Service, Washington, D.C., for defendant.

### MEMORANDUM OPINION AND ORDER

CARMAN, Judge:

Plaintiff American Permac, Inc., the importer of the subject merchandise, moves for summary judgment on the ground that Customs' liquidation of the entries in this case pursuant to the United States Department of Commerce's ("Commerce") January 10, 1985 final results of a periodic review of an antidumping finding are void by virtue of the four-year limitation on liquidations under 19 U.S.C. § 1504(d) (1988).

Section 1504(d) provides that any entry of merchandise not liquidated within four years after the date of entry or final withdrawal from warehouse shall be "deemed liquidated" at the amount of duty asserted at the time of entry by the importer "unless liquidation continues to be suspended as required by statute or court order."

The subject merchandise consists of imported drycleaning machines from the Federal Republic of Germany which were entered in April and June of 1979.[1] The entries were liquidated on April 25, 1986

and May 2, 1986. Protests were timely filed and all liquidated duties have been paid.

Defendant opposes Plaintiff's motion and cross-moves for summary judgment, contending that Plaintiff is collaterally estopped from relitigating the § 1504(d) issue by virtue of this Court's determination in *American Permac, Inc. v. United States,* 10 CIT 535, 642 F.Supp. 1187 (1986) (*"API I"*), which involved the same parties and merchandise as the instant case but different entries. There, the Court held that suspension of liquidation is required by statute and continues until the International Trade Administration ("ITA") publishes the final results of its administrative review.

While Plaintiff concedes that the deemed liquidated issue was fully considered in *API I,* it argues that *API I* was not a "final" judgment having preclusive effect in this case. In any event, Plaintiff asserts that the issue was wrongly decided and should be reexamined by this Court.

"Summary judgment is properly granted only where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1390 (Fed.Cir.1987) (citing *Armco, Inc. v. Cyclops Corp.,* 791 F.2d 147, 149 (Fed.Cir.1986)). This Court finds that the are no material facts at issue and Defendants are entitled to judgment as a matter of law.

This Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1581(a) (1988).

### *Prior Decision—API I*

*API I,* decided on August 12, 1986, was the first of three slip opinions issued by Judge Watson in Court No. 85–01–00050. The decision addressed only the "deemed

---

1. The merchandise was subject to an antidumping order issued by the Treasury Department on November 8, 1972, and became subject to administrative reviews by Commerce after 1980, when the functions of administering the antidumping law were transferred from the Secretary of the Treasury to the Secretary of Commerce. Because the antidumping finding by Treasury remained in effect on January 1, 1980, the effective date of the Trade Agreements Act of 1979, the amount of duties imposed under the finding became subject to periodic review pursuant to 19 U.S.C. § 1675(a) (1988). *See American Permac, Inc. v. United States,* 10 CIT 535, 536, 642 F.Supp. 1187, 1188–89 (1986).

liquidated" issue in that case. The issue was decided first because API obtained leave of Court to brief the issue separately from the other issues in the case and the issue was potentially dispositive of the action if resolved in API's favor. The Court denied API's motion for partial summary judgment, rejecting its argument that the application of the final results of a periodic review of an antidumping finding issued by the ITA to the entries covered by the review was barred by the four-year limitation on liquidations imposed under 19 U.S.C. § 1504(d).

The Court held that "suspension of liquidation was required by statute [19 U.S.C. § 1675(a) ] so that § 1504(d) does not bar application of the challenged determination to the entries under review." *API I*, 10 CIT at 536, 642 F.Supp. at 1188. Judge Watson decided that suspension continued until the ITA published the final results of its administrative review. *Id.*, 10 CIT at 546, 642 F.Supp. at 1197. The decision was not appealed.

The second decision reached in Court No. 85–01–00050 was entered on December 1, 1988. *American Permac, Inc. v. United States*, 12 CIT 1134, 703 F.Supp. 97 (1988). There, the Court affirmed the final results of Commerce's periodic review except for Commerce's finding that API did not qualify for a level of trade adjustment. 12 CIT at 1142, 703 F.Supp. at 103–04.

Thereafter, on June 14, 1989, Commerce revised its final results and the Court affirmed them in the third and last decision in Court No. 85–01–00050. *American Permac, Inc. v. United States*, 13 CIT 487, 488, 714 F.Supp. 1244, 1245 (1989). In the revised final results, Commerce granted plaintiffs a level of trade adjustment. This was the final judgment disposing of the entire case, and it was not appealed.

Both parties agree that the only difference between *API I* and the instant case is that in the instant case the merchandise

entered between April 12, 1979 and June 20, 1979, while in *API I* it entered between July 1, 1979 and June 30, 1980.

The first issue to be decided by this Court is whether the *API I* determination should be given preclusive effect in the instant action.

### Collateral Estoppel

Plaintiff contends that Judge Watson's determination in *API I* does not collaterally estop it from relitigating the matter here because certain elements of collateral estoppel are not present, to wit, that the determination was (1) not a final, appealable judgment and (2) not essential to the ultimate final judgment entered on June 14, 1989.

■ In order for a judicial determination to have conclusive effect in subsequent litigation with respect to a particular legal issue, a concept known as issue preclusion or collateral estoppel, the issue sought to be precluded from relitigation must have been actually and necessarily determined by a valid final judgment. *Block v. United States*, 4 Fed.Cir. (T) 21, 24–25, 777 F.2d 1568, 1572 (1985); see 18 Charles A. Wright et al., *Federal Practice and Procedure* § 4416, at 137–38 (1981) ("Wright"); Restatement (Second) of Judgments ("Restatement") § 27 (1982).[2] The Restatement defines issue preclusion as follows:

§ 27 Issue Preclusion—General Rule

When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

■ According to the Restatement, a "final judgment" for the purposes of issue preclusion "includes any prior adjudication of an issue in another action that is deter-

---

**2.** Our appellate court and this Court have looked to the Restatement of Judgments for guidance on matters concerning issue preclusion. *See, e.g., Block*, 4 Fed.Cir. (T) at 24–25, 777 F.2d at 1572; *Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1135 (Fed.Cir.1985); *Young* *Engineers, Inc. v. United States*, 2 Fed.Cir. (T) 9, 19, 721 F.2d 1305, 1314 (1983); *PPG Indus., Inc. v. United States*, 14 CIT ——, ——, 746 F.Supp. 119, 133 (1990); *Cabot Corp. v. United States*, 12 CIT 664, 670 n. 5, 694 F.Supp. 949, 953 n. 5 (1988).

mined to be sufficiently firm to be accorded conclusive effect." Restatement § 13. An important factor in determining the finality of a decision for issue preclusion is whether that decision was ever subject to an appeal. *Block*, 4 Fed.Cir. (T) at 24, 777 F.2d at 1571–72, citing *Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.2d 80, 89 (2d Cir.1961), *cert. denied*, 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962); *see* Restatement § 13, Comment g;[3] *see also* Wright § 4433, at 315 ("Decisions that could not have been tested by appeal may seem suspect candidates for preclusion"). Section 28 of the Restatement clearly states that relitigation of an issue is *not* precluded when "[t]he party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action." *See Cabot Corp. v. United States*, 12 CIT 664, 671, 694 F.Supp. 949, 954–55 (1988) (hereinafter "*Cabot II*").[4]

*Cabot II* underscores the importance of the appealability factor in determining finality. The plaintiff there challenged the ITA's use of the general availability test to measure subsidies during a periodic review of a countervailing duty order. Because the Court had found the general availability test an unacceptable legal standard in an earlier case, 9 CIT 489, 495, 620 F.Supp. 722, 730 (1985) (hereinafter "*Cabot I*"), the

plaintiff argued that the government was precluded from relitigating the matter in the periodic review. In *Cabot I* the Court had remanded the case to the agency, but upon the government's motion for vacatur of part of the decision, the Court granted the motion and affirmed final judgment sustaining the government's countervailing duty determination and order. The final judgment covered all matters except those for which the action had been remanded— thus the final judgment was partial, and it favored the government. The Court in *Cabot II* concluded that "since *Cabot I* culminated in a final judgment from which there was no effective appeal on the merits available to the defendant United States, collateral estoppel does not apply against the government in this [periodic] review." *Cabot II*, 12 CIT at 671, 694 F.Supp. at 954–55.

■ The Court finds that because the determination in *API I* was an interlocutory order denying partial summary judgment, it was clearly not a "final" appealable judgment within the meaning of the law. *See* 28 U.S.C. §§ 1291, 1292, and 1295(a)(5) (1988).[5] As an unappealable *partial* summary judgment, the *API I* ruling has no collateral estoppel effect. *See, e.g., Avondale Shipyards, Inc. v. Insured Lloyd's*, 786 F.2d 1265, 1269–70 (5th Cir.

---

**3.** Comment g of § 13 of the Restatement suggests the following guidelines for determining whether the prior decision of an issue is "final" for preclusion purposes:

[T]he court should determine that the decision to be carried over was adequately deliberated and firm, even if not final in the sense of forming a basis for a judgment already entered. Thus preclusion should be refused if the decision was avowedly tentative. On the other hand, that the parties were fully heard, that the court supported its decision with a reasoned opinion, *that the decision was subject to appeal or was in fact reviewed on appeal*, are factors supporting the conclusion that the decision is final for the purpose of preclusion.

Restatement § 13, Comment g (emphasis added).

**4.** Defendant correctly states that other factors besides the appealability of a judgment are relevant in determining whether a judgment is final for preclusion purposes, such as whether the parties were fully heard and whether the court's decision was supported by a reasoned opinion.

*See* Comment g of Restatement § 13; *Miller Brewing Co. v. Jos. Schlitz Brewing Co.*, 605 F.2d 990, 996 (7th Cir.1979), *cert. denied*, 444 U.S. 1102, 100 S.Ct. 1067, 62 L.Ed.2d 787 (1980); *Lummus Co.*, 297 F.2d at 89; *Illinois Bell Tel. Co. v. Haines & Co.*, 713 F.Supp. 1122, 1124 (N.D.Ill.1989). However, no authority cited by Defendant states that preclusion can apply when a judgment is *not* subject to appeal immediately or at some point in the future. *See Avondale Shipyards, Inc. v. Insured Lloyd's*, 786 F.2d 1265, 1270 (5th Cir.1986); *see also* Wright § 4433, at 315–16.

**5.** Pursuant to 28 U.S.C. § 1291, the courts of appeals, other than the Court of Appeals for the Federal Circuit, have jurisdiction over final decisions of the district courts. The Court of Appeals for the Federal Circuit has jurisdiction over final decisions of the Court of International Trade pursuant to 28 U.S.C. § 1295(a)(5); its jurisdiction over questions of law certified for appeal is found at 28 U.S.C. § 1292(d)(1).

1986); *Golman v. Tesoro Drilling Corp.*, 700 F.2d 249, 253 (5th Cir.1983); *Travelers Indem. Co. v. Erickson's Inc.*, 396 F.2d 134, 136 (5th Cir.1968); 6 *Moore's Federal Practice* ¶ 56.20[3.–4] (2d ed. 1988).

█ Defendant also argues that Plaintiff could have sought appellate review of this Court's decision on the "deemed liquidated" issue after the Court entered its last order of June 14, 1989, affirming the results of the administrative review. Plaintiff counters that even if the deemed liquidated issue was subsumed in the final judgment of June 14, 1989, it could not have, as a practical matter, appealed the matter because final judgment on the merits favored the Plaintiffs. *See* Wright § 4433, at 317 ("a prevailing party is not allowed standing to appeal unfavorable findings, and the findings do not preclude later litigation of the same issues."); *Cabot*, 12 CIT at 671, 694 F.Supp. at 954–55.[6]

For the reasons below, the Court finds that the June 14 judgment, although final, was not subject to appeal in the sense required for preclusion of the deemed liquidated issue.

First, it is far from clear as to which party prevailed. In Commerce's revised final results which were the subject of the June 14 final judgment, Commerce granted plaintiffs a level of trade adjustment which resulted in an almost 50 percent reduction of the weighted-average dumping margins; on the other hand, it is argued that API did not "win" the case because antidumping margins were still imposed. Even assuming this Court viewed the deemed liquidated determination to have been subsumed in the June 14 final judgment, it would be unjust for this Court to preclude Plaintiff from relitigating the deemed liquidated issue because it reasonably chose not to risk what appears to have been consider-

able gains in the litigation by appealing the matter.

Second, because the Court views the interlocutory determination in *API I* as non-essential to the final judgment eventually issued on June 14 in *American Permac, Inc. v. United States*, 13 CIT 487, 714 F.Supp. 1244,[7] it follows that the June 14 final judgment cannot somehow make *API I* preclusively final. *See Avondale Shipyards*, 786 F.2d at 1272. While the deemed liquidated issue in *API I* may have been potentially dispositive of the entire case, it was not "essential" to the final judgment because it had no bearing on the merits of that judgment. As discussed, Judge Watson considered and decided the issue independently of the other issues in the case. It is also significant that the deemed liquidated issue was not mentioned in either the second (Dec. 1, 1988) or final (June 14, 1989) slip opinions issued in Court No. 85–01–00050.

### Suspension of Liquidation by Operation of Law

█ While collateral estoppel does not apply here, Judge Watson's determination in *API I* has direct precedential value and the reasoning therein is overwhelmingly persuasive. While this Court is not bound by that determination, *see Algoma Steel Corp. v. United States*, 7 Fed.Cir. (T) 154, 157, 865 F.2d 240, 243, *cert. denied*, 492 U.S. 919, 109 S.Ct. 3244, 106 L.Ed.2d 590 (1989), the Court adopts the reasoning therein as sound and applicable to the entries in the instant case.

The pertinent subsections of § 1504 provide as follows:

§ 1504. Limitation on liquidation

(a) Liquidation

Except as provided in subsection (b) of this section, an entry of merchandise not liquidated within one year from:

---

**6.** In *Cabot*, this Court noted that "[i]f litigants were permitted to appeal decisions in which they were successful but dissatisfied with the lower court's reasoning, appellate courts would be unduly burdened and presumably asked to issue advisory opinions...." 12 CIT at 671 n. 6, 694 F.Supp. at 954–55 n. 6.

**7.** The "essential to the judgment" or "necessarily decided" requirement of collateral estoppel is designed to ensure that the tribunal in the first case took sufficient care in determining the issue sought to be precluded and did not merely decide that issue collaterally or in dicta. Wright § 4421, at 192–94.

(1) the date of entry of such merchandise;

(2) the date of the final withdrawal of all such merchandise covered by a warehouse entry; or

(3) the date of withdrawal from warehouse of such merchandise for consumption where, pursuant to regulations issued under section 1505(a) of this title, duties may be deposited after the filing of an entry or withdrawal from warehouse;

shall be deemed liquidated at the rate of duty, value, quantity, and amount of duties asserted at the time of entry by the importer of record. Notwithstanding section 1500(e) of this title, notice of liquidation need not be given of an entry deemed liquidated.

(b) Extension

The Secretary may extend the period in which to liquidate an entry by giving notice of such extension to the importer of record in such form and manner as the Secretary shall prescribe in regulations, if—

(1) information needed for the proper appraisement or classification of the merchandise is not available to the appropriate customs officer;

(2) liquidation is suspended as required by statute or court order; or

(3) the importer of record requests such extension and shows good cause therefor.

(c) [Not relevant here]

(d) Limitation

Any entry of merchandise not liquidated at the expiration of four years from the applicable date specified in subsection (a) of this section, shall be deemed liquidated at the rate of duty, value, quantity, and amount of duty asserted at the time of entry by the importer of record, unless liquidation continues to be suspended as required by statute or court order. When such a suspension of liquidation is removed, the entry shall be liquidated with 90 days therefrom.

19 U.S.C. § 1504(a), (b) and (d) (1988).

Plaintiff challenges as "clearly erroneous" Judge Watson's finding that liquidation of the entries was suspended by 19 U.S.C. § 1675(a)(1), which requires the ITA to conduct periodic reviews of antidumping orders, and that suspension continues until the ITA publishes the final results of that review. Plaintiff urges that in the absence of a court order or statute *explicitly* suspending liquidation beyond the four year limit in 19 U.S.C. § 1504(d), entries must be liquidated at the rate asserted by the importer at the time of entry. This Court disagrees.

*API I* turned on the Court's interpretation of 19 U.S.C. § 1675(a). Finding that subsection (2) of that provision "expressly calls for the retrospective application of antidumping review determinations," the Court reasonably concluded that "suspension of liquidation during the pendency of a periodic antidumping review is unquestionably 'required by statute'". *API I*, 10 CIT at 539, 642 F.Supp. at 1191. This conclusion was consistent with controlling precedent.

After first observing that no court had previously addressed a challenge to an ITA review based on § 1504(d), Judge Watson looked to the Federal Circuit's treatment of § 1504(a) and (b) in *Ambassador Div. of Florsheim Shoe v. United States*, 3 Fed. Cir. (T) 28, 748 F.2d 1560 (1984). In *Florsheim*, the court upheld the ITA's authority to apply the final results of its review retrospectively to the entries covered by the review. According to Judge Watson, the *Florsheim* court reasoned that an extension of the period in which liquidation must occur could be grounded upon § 1504(b)(2) "because the administrative review scheme established in 19 U.S.C. § 1675(a) would be frustrated unless it created an implied statutory requirement that liquidation be suspended." *API I*, 10 CIT at 538, 642 F.Supp. at 1191; *see Florsheim*, 3 Fed.Cir. (T) at 31–33, 748 F.2d at 1563–65. Applying the *Florsheim* rationale to the facts before it, the Court stated that

[t]he basis for extending the liquidation period found in § 1504(b)(2)—that "liquidation is suspended as required by statute"—is also satisfied in this case. In concluding that a periodic review of a

countervailing duty determination triggers an implied statutorily required suspension of liquidation, the Federal Circuit in *Florsheim* focused on the "absurd consequences" of holding otherwise. That rationale is unnecessary where, as here, the administrative review is of an antidumping finding. Because 19 U.S.C. § 1675(a)(2) expressly calls for the retrospective application of antidumping review determinations ..., suspension of liquidation during the pendency of a periodic antidumping review is unquestionably "required by statute".

*API I*, 10 CIT at 539, 642 F.Supp. at 1191.

The *API I* Court concluded that statutory suspension continued until the ITA *completes* its periodic review because nothing in § 1504(d) directs that entries be deemed liquidated when liquidation is suspended by statute. *Id.; see Philipp Bros., Inc. v. United States*, 10 CIT 76, 630 F.Supp. 1317 (1986) (applying this reasoning to § 1504(a) and § 1675(a)(1)). Judge Watson's examination of the legislative history of § 1675(a) revealed no evidence that Congress intended to impose the "penalty" of deemed liquidation if the agency failed to complete its administrative review within four years. *API I*, 10 CIT at 540, 642 F.Supp. at 1192. The Court stated that

> [t]he "deemed liquidated" penalty of § 1504 operates irrationally, and if applied in an antidumping context could lead to particularly inequitable assessments, since the amount of deposited duties may bear little relation to actual dumping margins. In that situation it would seem especially critical that parties be guaranteed an adequate means to challenge the basis of the assessments. The scheme for judicial review of agency determinations under the new law, if applicable at all, is ill-suited to that purpose. Congress' failure to address this difficulty, coupled with its clearly expressed expectation that periodic review determinations would provide the basis for antidumping duty assessments on covered entries, persuades the court that Congress intended the statutory suspension of liquidation during a periodic re-

view to override the possibility of deemed liquidation under § 1504(d).

*API I*, 10 CIT at 546–47, 642 F.Supp. at 1197.

The *API I* Court's reasoning is sound and amply supported by the statutory scheme, legislative history, and case law. All of Plaintiff's arguments here were sufficiently addressed in that case. The law has not changed since that time, and the rationale of *API I* is no less sound now then it was then. Because there is no issue in this case as to any material fact and because the Court finds the reasoning in *API I* to be overwhelmingly persuasive, Defendant is entitled to summary judgment.

This Court does not condone the ITA's failure to liquidate the entries within the time limits of § 1504(d). It is clear that in enacting § 1504 Congress was dissatisfied with Treasury's delays in assessing antidumping and countervailing duties. Nevertheless, Plaintiff is incorrect that Congress intended the 4–year limit on liquidation under § 1504(d) to be the outside limit on all antidumping duty assessments. *See API I*, 10 CIT at 542–44, 642 F.Supp. at 1193–94. If entries involved in a periodic review were to be deemed liquidated by operation of law prior to the completion of the review, Congress' mandate that such reviews be conducted and antidumping duties be assessed and collected when dumping is found would be frustrated. If Congress had meant for § 1504(d) to take precedence over § 1675(a), it would have said so. If and until it does, this Court will follow our appellate court's finding in *Florsheim* that Congress intended § 1504 and provisions of § 1675(a) to "work harmoniously together, and for neither to frustrate the other...." 3 Fed.Cir. (T) at 34, 748 F.2d at 1565. While *Florsheim* involved a countervailing duty proceeding, its reasoning is equally applicable to an antidumping proceeding, where pursuant to § 1675(a)(2), antidumping determinations made in periodic reviews "shall be the basis for the assessment of antidumping duties on entries of the merchandise included within the determination and for deposits of estimated duties."

Finally, Plaintiff brings to the Court's attention this Court's recent decision in *Nunn Bush Shoe Co. v. United States*, 16 CIT ——, 784 F.Supp. 892 (1992), as support for its interpretation of § 1504(d). That case, however, is factually distinguishable from the instant case. *Nunn Bush* was an action challenging Customs' liquidation of various entries of shoes subject to a countervailing duty order. The Court ruled that Customs improperly liquidated the entries more than four years after the merchandise was entered, because there was no court order or statute suspending liquidation. Importantly, Commerce had issued its final results of the administrative review covering those entries two years earlier. Moreover, while there were injunctions suspending liquidation of some entries, they were lifted prior to the fourth anniversary of their entry. *Id.* 784 F.Supp. at 894. The Court ruled that "the entries were deemed liquidated by operation of law when they became four years old *since the liquidation was not suspended in any way.*" *Id.* at 895 (emphasis added).[8]

In the instant case, unlike *Nunn Bush*, Commerce had not completed the final results of its administrative review on the fourth anniversary date of the subject entries. In *API I*, it was this fact that caused the liquidations to remain suspended by operation of law, pending the publication of the final results in the Federal Register. *Nunn Bush*, therefore, lends no support to Plaintiff's position.

This Court has held that if plaintiffs are dissatisfied with the ITA's delay in complying with the law, the remedy is to seek judicial enforcement of the statutory deadline. *API I*, 10 CIT at 543, 546, 642 F.Supp. at 1194, 1197; *see Nakajima All Co., Ltd, v. United States*, 12 CIT 585, 590–91, 691 F.Supp. 358, 363 (1988). The Court must presume that Plaintiffs were aware of this potential avenue of relief but chose to ignore it.

## CONCLUSION

This Court holds that there are no material issues of fact in dispute. Because the Court holds that the liquidation of the entries in this action was suspended by statute pending the completion of the ITA's periodic review, it is ORDERED that Plaintiff's motion for summary judgment is denied, and that Defendant's cross-motion for summary judgment is granted. The assessment of antidumping duties by Customs is affirmed. The action is dismissed.

---

**8.** The *Nunn Bush* court was apparently aware of *API I* when it issued its ruling, as it is cited in the opinion, but made no attempt to distinguish or comment on it.