**RHEEM METALURGICA S/A, formerly Rheem Empreendimentos Industriais E Comerciais S.A., Plaintiff,**

v.

**UNITED STATES, Defendant.**

Slip Op. No. 96–196.
Court No. 92–06–00380.

United States Court of International Trade.

Dec. 20, 1996.

242

David P. Schulingkamp, New Orleans, LA, for plaintiff.

Frank W. Hunger, Washington, DC, Assistant Attorney General of the United States; Joseph I. Liebman, Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (James A. Curley, New York City); Edward N. Maurer, Spring Valley, NY, Office of the Assistant Chief Counsel, United States Customs Service, of Counsel, for defendant.

OPINION

CARMAN, Chief Judge:

This case is before the Court on cross-motions for summary judgment pursuant to USCIT R. 56. Plaintiff challenges the United States Customs Service's ("Customs") denial of its protests concerning the assessment and collection of countervailing duties on nine entries of cold rolled carbon steel sheet from Brazil. Plaintiff moves for summary judgment, contending the entries became liquidated by operation of law on the dates of their fourth anniversary of entering into the United States. Plaintiff asserts the goods became liquidated by operation of law at the value, quantity, rate of duty and amount of duty asserted by plaintiff at the time of entry, and claims that because plaintiff did not assert countervailing duties were due in the entry summary documentation accompanying the nine entries, Customs improperly assessed and collected countervailing duties when the goods ultimately were liquidated.

Defendant cross-moves for summary judgment, contending the nine entries never were eligible to become liquidated by operation of law due to confusion over the status of the entries, and asserts a counterclaim with respect to certain entries, which it contends should have been liquidated at a higher countervailing duty rate. Alternatively, defendant asserts if the nine entries did become liquidated by operation of law, they became liquidated by operation of law at a higher rate than was assessed when Customs liquidated the goods in 1989. Defendant asserts a second counterclaim, contingent upon this Court's finding the entries at issue became liquidated by operation of law, for additional countervailing duties it claims are due upon the merchandise at issue. The cross-movants agree, and the Court finds, there are no genuine material issues of fact in dispute and this action may be decided on motion for summary judgment under USCIT R. 56. This Court has jurisdiction pursuant to 28 U.S.C. § 1581(a) (1988), and for the reasons set forth below denies plaintiff's motion for summary judgment and defendant's counterclaims, and grants in part and denies in part defendant's cross-motion for summary judgment.

BACKGROUND

At issue in this case are nine entries of cold rolled carbon steel sheet which plaintiff exported from Brazil—where the merchandise was manufactured—and imported into the United States. Plaintiff is not a manufacturer of cold rolled carbon steel sheet. Rather, Rheem purchased the goods from three Brazilian manufacturers: Companhia Siderurgica Paulista ("COSIPA"), Companhia Siderurgica Nacional ("CSN") and Usinas Siderurgicas de Minas Gerais ("USIMINAS"). The goods entered the United States at the ports of Houston and New Orleans between February 16, 1984 and June 15, 1984. The following chart lists the entries, as well as their dates of entry and liquidation.[1]

| Entry Number | Date of Entry | Date of Liquidation |
|---|---|---|
| 84–343083–7 | 2/16/84 | 11/24/89 |
| 84–343092–1 | 3/20/84 | 11/13/89 |
| 84–343093–4 | 3/26/84 | 11/17/89 |
| 84–344297–7 | 4/02/84 | 11/13/89 |
| 84–343097–6 | 4/22/84 | 11/17/89 |
| 84–344910–3 | 5/02/84 | 09/15/89 |
| 84–345314–4 | 6/15/84 | 11/24/89 |
| 558–84231317–5 | 5/08/84 | 7/28/89 |
| 558–84232292–0 | 5/30/84 | 7/28/89 |

On February 10, 1984, several days before the first of the nine entries at issue was imported into the United States, the Department of Commerce ("Commerce") published its preliminary determination in countervailing duty investigation C–351–021, the scope of which included cold rolled carbon steel sheet from Brazil. *See Certain Carbon Steel Products from Brazil*, 49 Fed.Reg. 5,157 (Dep't Comm.1984) (prelim.determ.). Commerce's preliminary determination found that Brazilian manufacturers, producers, or exporters of certain carbon steel products were receiving subsidies, and estimated the net subsidy to be 27.42% *ad valorem*. The preliminary determination directed the Customs Service to suspend liquidation of all entries of subject merchandise from Brazil and to require a cash deposit or bond on the subject merchandise equal to the estimated net subsidy.

Plaintiff imported the nine entries claiming they were classifiable under item 607.8360, TSUS, a tariff provision within the scope of Commerce's *Certain Carbon Steel Products from Brazil* countervailing duty investigation. In fulfilling the requirements for entering the goods into the United States, plaintiff completed a Customs Form 7501 ("CF 7501") and a Special Steel Summary Invoice ("SSSI") for each entry. Plaintiff or its agent acknowledged the entered goods were within the scope of Commerce's investigation by writing or typing "CVD" or "C–351–021" or both on the CF 7501 forms or the corresponding invoices accompanying the entries. Customs rejected the entry summary documentation of several entries, even though plaintiff acknowledged the applicability of Commerce's investigation to its entries, due to plaintiff's failure to post an appropriate bond as required by the preliminary determination. Once plaintiff posted a proper bond, the amount of which was calculated based on the appropriate countervailing duty rates published in the Federal Register, Customs accepted Rheem's entry summaries as filed in proper form. In addition to completing the CF 7501 forms, plaintiff completed SSSI as part of the requirements for getting its goods entered into the United States. Despite the fact that plaintiff did not manufacture cold rolled carbon steel sheet, several of the SSSI incorrectly stated that Rheem was the manufacturer of the entered merchandise.

Commerce's final determination in the countervailing duty investigation was published in the Federal Register on April 26, 1984. *See Certain Carbon Steel Products*

---

1. The chart's first seven entries passed through the port of Houston, while the last two entries passed through the port of New Orleans.

*from Brazil,* 49 Fed.Reg. 17,988 (Dep't Comm.1984) (final determ.). Commerce's final determination made an affirmative finding of subsidization and established the following countervailing duty rates for Brazilian manufacturers exporting subject merchandise to the United States: COSIPA 36.48% *ad valorem;* CSN 62.18% *ad valorem;* USIMINAS 17.49% *ad valorem;* All others 36.95% *ad valorem.*

The day after Commerce published its final determination, Customs issued Instruction 84/113 (Telex 04272). Instruction 84/113 provided guidance to Customs officials on how to apply and enforce the results of Commerce's determination, stating "[w]here the producer is no [sic] the exporter, and the producer is known, the rate for that producer shall be used in determining the cash deposit. If the producer is unknown, the rate shall be 36.95 percent ad valorem." United States Customs Service, Instruction 84/113 (Telex 04272) (April 27, 1984).

Slightly less than three years later, Commerce published the final results of its first administrative review, which covered the period from February 10, 1984 to September 30, 1984. Commerce's first administrative review established the following countervailing duty rates: COSIPA 9.14% *ad valorem;* CSN 39.98% *ad valorem;* USIMINAS 0.0% *ad valorem;* All Others 21.13% *ad valorem.* *See Certain Carbon Steel Products from Brazil,* 52 Fed.Reg. 829 (Dep't Comm.1987) (first admin. review).

Commerce's findings in the first administrative review were challenged in this Court by COSIPA, CSN and an importer of the subject merchandise.[2] On February 18, 1987, slightly more than one month after the results of the first administrative review were published in the Federal Register, this Court issued an injunction prohibiting Commerce and the Customs Service from liquidating any or all unliquidated entries of carbon steel sheet exported by COSIPA or CSN that were subject to the results of the first administrative review. On February 18, 1987, the Customs Service issued Instruction

87–81 (Telex 001999), which incorrectly instructed Customs officers to withhold liquidation of all entries covered by the first administrative review, rather than only the subject merchandise exported by COSIPA or CSN. This instruction was modified on July 23, 1987, following Commerce's request that the Customs Service issue a second telex clarifying the instructions communicated in Instruction 87–81. Instruction 87–199 (Telex 08432) stated

1. THIS CORRECTS C.I.E. INSTRUCTIONS NO. 87/81 OF FEBRUARY 18, 1987.

. . . .

THE SUSPENSION OF LIQUIDATION INSTRUCTIONS IN THAT C.I.E. APPLY ONLY TO ENTRIES OF CERTAIN CARBON STEEL PRODUCTS EXPORTED BY COMPANHIA SIDERURGICA PAULISTA ("COSIPA") OR COMPANHIA SIDERURGICA NACIONAL ("CSN").

. . . .

THE PRELIMINARY INJUNCTION ISSUED BY THE COURT OF INTERNATIONAL TRADE APPLIES ONLY TO ENTRIES OF THIS MERCHANDISE EXPORTED BY COSIPA OR CSN.

United States Customs Service, Instruction 87–199 (Telex 08432) (July 23, 1987).

Customs ultimately liquidated the nine entries between July 28, 1989 and November 24, 1989, more than four years after the date of entry for all nine entries. Customs classified the goods under item 607.83, TSUS, and assessed regular duties of 6.6% *ad valorem* in addition to countervailing duties. Customs assessed countervailing duties according to the exporter identified in the entry summary documentation, unless those papers identified the goods' manufacturer, in which case Customs assessed countervailing duties at the corresponding rate for that manufacturer. In liquidating the goods, Customs assessed and collected countervailing duties according to the rates published by Commerce in the first administrative review, *i.e.,*

---

2. The importer ultimately abandoned its challenge of the first administrative review, while this Court rejected COSIPA and CSN's challenge.

*See Companhia Siderurgica Paulista, S.A. v. United States,* 12 CIT 1098, 700 F.Supp. 38 (1988).

COSIPA 9.14% *ad valorem;* CSN 27.42% *ad valorem;*[3] USIMINAS 0.0% *ad valorem;* and All Others 21.13% *ad valorem.*

## CONTENTIONS OF THE PARTIES

### A. *Plaintiff*

In its papers submitted to this Court, plaintiff advances two arguments in support of its motion for summary judgment. First, plaintiff argues the nine entries at issue became liquidated by operation of law on the fourth anniversary of their dates of entry into the United States. Plaintiff contends "[a]ll nine entries in question should be deemed by this Court to have been liquidated by operation of law under 19 U.S.C. 1504 on the fourth anniversary date of each of the entries, at the rate and amount of duty asserted at the time of entry." (Pl.'s Br. in Supp. of Mot. for J. on Agency R. (Pl.'s Br.) at 3.) Plaintiff asserts the entries were eligible for liquidation because Instruction 87–199, issued by Customs on July 23, 1987, clearly terminated the suspension of liquidation established in Commerce's preliminary determination, and that the District Directors failed to liquidate the entries within four years of the date of their entry contrary to the specific instructions of Instruction 87–199.[4] Plaintiff contends Customs' confusion over the scope of this Court's injunction, which suspended liquidation of subject merchandise exported by COSIPA and CSN, but which did not cover merchandise exported by Rheem, should not be considered sufficient to prevent liquidation of the nine entries by operation of law.

In advancing its argument the nine entries became liquidated by operation of law, plaintiff relies heavily on this Court's decision in *Nunn Bush Shoe Co. v. United States,* 16 CIT 45, 784 F.Supp. 892 (1992), asserting the present case is "[i]n all material respects . . . square on point with *Nunn–Bush.*" (Pl's Br. at 9.) Plaintiff asserts that, like in *Nunn*

*Bush Shoe Co.,* this Court should determine that "entries which turned four years old were liquidated by operation of law and any subsequent attempts by Commerce to liquidate these entries are invalid." (Pl.'s Br. at 9 (quoting *Nunn Bush Shoe Co.,* 16 CIT at 48, 784 F.Supp. at 895.).)

Second, plaintiff argues it did not assert countervailing duties were due in the entry summary documentation it submitted, and therefore Customs improperly assessed and collected countervailing duties on the entries when the goods ultimately were liquidated. Plaintiff asserts the entries should be considered liquidated by operation of law "at the rate and amount of duty asserted by Rheem at the time of entry. The rate of duty asserted by Rheem and accepted by Customs, as evidenced by the entry documents presented by defendant, was 6.6% ad valorem." (Pl.'s Reply to Def.'s Opp'n to Pl.'s Mot. for Summ.J. (Pl.'s Reply) at 4 (emphasis omitted).) Plaintiff contends the entries at issue "were made with assertions of duties which did not include countervailing duties assessed by Customs subsequent to the time of entry and subsequent to the fourth anniversary date." (Pl's Br. at 9.) Plaintiff claims the assessment of countervailing duties by Customs constitutes an "untimely and unlawful liquidation [of] . . . increased duties that Customs had no authority to assess against these entries." (Pl.'s Reply at 4 (emphasis omitted).)

Plaintiff requests this Court order the District Directors of Customs at the ports of New Orleans and Houston to reliquidate the subject entries without the assessment of countervailing duties. Additionally, plaintiff seeks a refund of all countervailing duties paid on the nine entries, as well as interest on those payments. Finally, plaintiff requests this Court order defendant to pay plaintiff's costs incurred in bringing this suit,

---

**3.** While Commerce's final determination found a higher countervailing duty rate for CSN, the preliminary determination's bond-posting rate of 27.42% *ad valorem* established a ceiling on the rate to be assessed.

**4.** Plaintiff characterizes Customs' July 23, 1987 telex which states "CUSTOMS OFFICIALS

WILL LIQUIDATE ALL SHIPMENTS OF THIS MERCHANDISE FROM OTHER EXPORTERS ENTERED, OR WITHDRAWN FROM WAREHOUSE, FOR CONSUMPTION ON OR AFTER FEBRUARY 10, 1984 AND ON OR BEFORE SEPTEMBER 30, 1984" as an order to liquidate. (Pl.'s Br. at 5.)

as well as attorney's fees and any other relief the Court deems just.

B. *Defendant*

Defendant raises two arguments in support of its cross-motion for summary judgment and in response to plaintiff's assertions. First, defendant argues there was "legitimate confusion over the application of the liquidation instructions, resulting in an (erroneous) interpretation by the districts involved, that these entries were still subject to the suspension which remained in effect until the *COSIPA* case was resolved, which was after the entries were more than four years old." (Def.'s Opp'n to Pl.'s Mot. for J. on Agency R. and in Supp. of Def.'s Cross–Mot. for Summ.J. (Def.'s Br.) at 8.) Defendant asserts that "[a]s a result of this confusion, the entries should be viewed as falling under the rule in *Canadian Fur Trappers Corp. v. United States*, 884 F.2d 563 (Fed.Cir.1989), which is to the effect that where a suspension is removed after an entry is already more than four years old, the entry does not become deemed liquidated." (*Id.*) Pursuant to 28 U.S.C. § 1583 (1988), defendant asserts a counterclaim relying on this argument, asserting Customs improperly liquidated some of the subject merchandise at a rate of 9.14% *ad valorem.* Defendant contends that the appropriate rate is the "All Other" rate of 21.13% *ad valorem* for merchandise exported by any exporter other than COSIPA, CSN or USIMINAS which was established in the first administrative review. Defendant asserts that because Rheem was the exporter of record, all the entries should have been liquidated at the "All Other" rate of 21.13% *ad valorem,* and therefore, Rheem is liable for the difference, with interest as provided by law.

Alternatively, defendant argues "if the entries became deemed liquidated, it was at the net subsidy rate in effect on the date of entry regardless of whether Rheem posted a bond or deposited cash." (*Id.*) Contingent on this Court's finding the subject merchandise was liquidated by operation of law following the fourth anniversary of the merchandise's entry into the United States, defendant asserts a counterclaim, pursuant to 28 U.S.C. § 1583 (1988), claiming the entries should have been liquidated at the preliminary deposit rate of 27.42% *ad valorem,* or alternatively at the 21.13% *ad valorem* rate established by the first administrative review. Defendant contends plaintiff is liable for the difference between the amount actually assessed and collected upon liquidation and 27.42% *ad valorem* or alternatively 21.13% *ad valorem,* with interest as provided by law.

## STANDARD OF REVIEW

In any civil action contesting the denial of a protest under section 515 of the Tariff Act of 1930, this Court reviews the record *de novo. See Semperit Indus. Prods., Inc. v. United States,* 18 CIT 578, 855 F.Supp. 1292, 1297–98 (1994). Although the decision of the Customs Service is presumed correct and the "burden of proving otherwise shall rest upon the party challenging such decision," the Court's role in reviewing the decision is to reach the correct result. 28 U.S.C. § 2639(a)(1) (1988); *see also Semperit Indus. Prods., Inc.,* 18 CIT at ——, 855 F.Supp. at 1297 (citing *Jarvis Clark Co. v. United States,* 2 Fed.Cir. (T) 70, 75, 733 F.2d 873, 878 (1984) (footnote omitted)). The Court will therefore consider this matter *de novo* and review the record to reach the proper result.

## DISCUSSION

This case is before the Court on cross-motions for summary judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." USCIT R. 56(d). "The Court will deny summary judgment if the parties present a dispute about a fact such that a reasonable trier of fact could return a verdict against the movant." *Ugg Int'l, Inc. v. United States,* 17 CIT 79, 83, 813 F.Supp. 848, 852 (1993) (quotation and citation omitted). When appropriate, summary judgment is a favored procedural device to "secure the just, speedy and inexpensive determination" of an action. *Sweats Fashions, Inc. v. Pannill Knitting Co.,* 833 F.2d 1560, 1562 (Fed.

Cir.1987) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986)) (internal quotations omitted). This case does not raise any genuine issue of material fact. The issues that remain are whether the nine entries became liquidated by operation of law, and what the appropriate countervailing duty rate was for liquidation. Because these issues pertain solely to matters of statutory interpretation, the Court concludes the conflict between the parties raises a question of law which the Court may properly resolve by summary judgment.

### I. *Liquidation by Operation of Law*

The first issue before this Court is whether the nine entries at issue became liquidated by operation of law. Merchandise not liquidated within one year of its entry into the United States—and not subject to the exceptions enumerated in 19 U.S.C. § 1504(b)—is liquidated by operation of law on the first anniversary of the date of entry at the value, quantity, rate of duty, and amount of duty asserted by the importer or its agent at the time of entry. *See* 19 U.S.C. § 1504(a)(1) (1988). The statute, however, includes several exceptions which permit Customs to extend liquidation beyond the first anniversary of the goods entering the United States. *See* 19 U.S.C. § 1504(b) (1988). For example, the statute permits an extension when liquidation is suspended by operation of statute or court order. *See* 19 U.S.C. § 1504(b)(2) (1988). The statute, however, also includes a provision which, in relevant part, states

> Any entry of merchandise not liquidated at the expiration of four years from the applicable date specified in subsection (a) of this section, shall be deemed liquidated at the rate of duty, value, quantity, and amount of duty asserted at the time of entry by the importer of record, *unless liquidation continues to be suspended as required by statute or court order.*

19 U.S.C. § 1504(d) (1988) (emphasis added).

This Court's decisions interpreting § 1504(d) reveal Customs has significant discretion in liquidating goods falling within § 1504(d)'s two exceptions. *See, e.g., Dal–Tile Corp. v. United States*, 17 CIT 764, 829 F.Supp. 394 (1993) (holding § 1504(a)'s one-year limit does not apply to entries falling within § 1504(d)'s exceptions, and Customs' liquidation eighteen months after date CIT dissolved final suspension of liquidation was within time allowed by § 1504(d)); *Eagle Cement Corp. v. United States*, 17 CIT 624, 1993 WL 235884 (1993) (holding entries more than four years old when court-ordered suspension of liquidation was terminated are not deemed liquidated by operation of law and sustaining Customs' liquidation twenty-one months after termination of the suspension of liquidation); *American Permac, Inc. v. United States*, 16 CIT 672, 679, 800 F.Supp. 952, 958 (1992) (citation omitted) ("It is clear that in enacting § 1504 Congress was dissatisfied with Treasury's delays in assessing antidumping and countervailing duties. Nevertheless, Plaintiff is incorrect that Congress intended the 4–year limit on liquidation under § 1504(d) to be the outside limit on all antidumping duty assessments."). Indeed, the breadth of Customs' discretion encouraged this Court to invite Congress to consider amending § 1504(d) in order to "promote certainty in the customs process while also providing Customs sufficient latitude for handling large numbers of entries." *Dal–Tile Corp.*, 17 CIT at 772, 829 F.Supp. at 400.

While this Court's decisions make clear Customs has significant discretion in liquidating entries falling within the exceptions listed in § 1504(d), the case law also clearly establishes § 1504(d) will be applied strictly with regard to entries not falling within the exceptions. *See, e.g., Dal–Tile Corp.*, 17 CIT at 771, 829 F.Supp. at 399 (citation omitted) ("Under present law, if the suspensions were to terminate one day before the fourth anniversary date, Customs would have only one day in which to liquidate the merchandise and thereby avoid the application of the deemed liquidation rule in § 1504(d)."); *Nunn Bush Shoe Co.*, 16 CIT at 48, 784 F.Supp. at 894–95 ("Section 1504 unambiguously states that if an entry is not liquidated within four years, then it will be deemed liquidated by operation of law unless the period is extended as per 19 U.S.C. § 1504(b)(1)–(3).").

**248**

■ In determining whether the entries in the present case became liquidated by operation of law, the Court must examine whether the goods came within the scope of the exceptions listed in § 1504(d). In conducting this analysis, the Court must determine whether liquidation was suspended by operation of statute or by court order on the fourth anniversary of the goods entering the United States. First, with respect to statutory suspension of liquidation, the Court notes Commerce's publication on January 9, 1987 of its findings in the first administrative review terminated the statutory suspension of liquidation. *See* 19 U.S.C. § 1675(a)(1) (1988) (results of administrative review become basis for assessment of countervailing duties on entries covered by the review); 19 C.F.R. § 355.21(a) (1989) (Commerce will publish final countervailing duty order in Federal Register that "[i]nstructs the Customs Service to assess countervailing duties on the merchandise, in accordance with the Secretary's instructions at the completion of each administrative review"); *cf.* 19 U.S.C. § 1671b(d)(1) (1988) (requiring suspension of liquidation after a preliminary determination of subsidization is published in Federal Register); 19 U.S.C. § 1671e(a)(4) (1988) (requiring deposit of estimated countervailing duties pending liquidation of entries of merchandise). Because Commerce's publication of the results of the first administrative review in January 1987 terminated the statutory suspension of liquidation prior to the fourth anniversary of the goods entering the United States, the Court finds the entries in question did not fall within the exception of § 1504(d), which provides that merchandise not liquidated by the fourth anniversary of its entry into the United States "shall be deemed liquidated at the rate of duty, value, quantity, and amount of duty asserted at the time of entry by the importer of record, *unless liquidation continues to be suspended as required by statute.*" 19 U.S.C. § 1504(d) (1988) (emphasis added).

■ In addition to addressing suspension of liquidation by operation of statute, § 1504(d) permits Customs to extend liquidation beyond the fourth anniversary of an entry's importation into the United States when a court order suspends liquidation of those goods. With respect to the present case, this Court's order of February 18, 1987 granting plaintiff's motion for a preliminary injunction in the *COSIPA* litigation applied only to products "exported by Companhia Siderurgica Paulista S.A. ('COSIPA') or by Companhia Siderurgica Nacional ('CSN')." *Companhia Siderurgica Paulista S.A. v. United States,* Court No. 87–02–00159 (CIT Feb. 18, 1987) (order granting preliminary injunction). Additionally, the Court notes defendant concedes Customs misunderstood the scope of this Court's injunction as it related to the liquidation instructions. *See* Def.'s Br. at 8 ("[T]here was legitimate confusion over the application of the liquidation instructions, resulting in an (erroneous) interpretation by the districts involved, that these entries were still subject to the suspension which remained in effect until the *COSIPA* case was resolved, which was after the entries were more than four years old."). The Court notes Customs' instructions regarding liquidation of goods within the scope of the *Certain Carbon Steel Products from Brazil* countervailing duty investigation differentiate between exporters and manufacturers, suggesting Customs was comfortable with such a distinction, and that making this distinction was not overly difficult.[5]

The Court finds the injunction issued by this Court in the *COSIPA* case was not applicable to the nine entries at issue, which were both exported from Brazil and imported into the United States by Rheem. Customs' mistake as to the preliminary injunction's scope does not excuse its failure to liquidate the entries. The Court also finds the entries at issue were eligible for liquidation following Commerce's publication of the results of the

---

**5.** The liquidation instructions issued by Customs on the day the final determination was published in the *Certain Carbon Steel Products from Brazil* investigation stated, "[w]here the producer is no [sic] the exporter, and the producer is known, the rate for that producer shall be used in determining the cash deposit. If the producer is unknown, the rate shall be 36.95 percent ad valorem." United States Customs Service, Instruction 84/113 (Telex 04272) (April 27, 1984). Thus, the instructions directed Customs officials to "look behind" the exporter to determine whether a countervailing duty rate for the manufacturer of the goods could be applied.

first administrative review, which occurred within the four year period following their entry into the United States. Accordingly, the Court finds liquidation of the nine entries was not suspended by operation of statute or court order on the fourth anniversary of their entry into the United States, and because Customs failed to exercise its power to liquidate the entries within four years of their dates of entry, the Court finds the entries were liquidated by operation of law, pursuant to 19 U.S.C. § 1504(d) (1988), on the respective dates of the fourth anniversary of their entry into the United States.

Finally, this Court rejects Customs' argument that *Canadian Fur Trappers Corp. v. United States*, 12 CIT 612, 691 F.Supp. 364 (1988) is relevant to this proceeding. *Canadian Fur Trappers Corp.* addresses the question of whether language in § 1504(d) requires liquidation of goods, where liquidation is suspended for more than four years from their date of entry under § 1504(d), within 90 days of the lifting of the suspension.[6] *Canadian Fur Trappers Corp.* is distinguishable from the present case because the goods at issue in *Canadian Fur Trappers,* unlike the nine entries at issue in the present case, were not eligible for liquidation upon the fourth anniversary of their entry into the United States. Because the Court, as noted above, finds the nine entries at issue in this case were not subject to any statutory or court ordered suspension of liquidation on the fourth anniversary of their entry into the United States, *Canadian Fur Trappers* is not relevant to the case at hand and does not affect the Court's finding that the nine entries at issue became liquidated by operation of law on the fourth anniversary of their entry into the United States.

## II. *Proper Countervailing Duty Rate for Liquidation*

Once it has been determined the entries in question were liquidated by operation of law, the remaining issue confronting the Court is determining the rate at which those entries became liquidated by operation of law. The

statute provides entries liquidated by operation of law "shall be deemed liquidated at the rate of duty, value, quantity, and amount of duty asserted at the time of entry by the importer of record." 19 U.S.C. § 1504(d) (1988). The meaning of "asserted" in § 1504 was addressed in a Notice of Final Rulemaking issued by the Customs Service, which stated " 'asserted' means that which is claimed and indicated by the importer, his consignee or agent on the entry summary or warehouse withdrawal." *Customs Regulations, Relating to the Entry of Merchandise, Liquidation of Entries, Warehousing Periods, and Marking of Bulk Containers of Alcoholic Beverages, Amended,* 44 Fed.Reg. 46,794, 46,809 (Dep't Treasury 1979).

While the arguments raised in the plaintiff's brief are consistent with the Court's finding the entries in question were liquidated by operation of law, plaintiff raises two arguments challenging Customs' assessment and collection of countervailing duties on the nine entries. First, plaintiff argues Rheem paid normal duties upon the goods entry, and that "additional [countervailing] duties ... assessed by Customs upon the untimely and unlawful liquidation were not asserted by Rheem or Customs." (Pl.'s Reply Br. at 4.) In making this argument, however, plaintiff concedes it "hand-wr[ote] a preliminary countervailing duty investigation number on the face of its C.F. 7501's and ... post[ed] the countervailing duty bond required by Customs." (Pl.'s Reply Br. at 5.)

Importers filing entry papers with the Customs Service have an obligation to make accurate submissions. *See* 19 C.F.R. § 141.64 (1984) (entry and entry summary documents found to contain errors "shall not be considered to have been filed in proper form and shall be returned to the importer for correction"). Customs rejected the entry summary documents submitted by plaintiff for several of the nine entries at issue for failure to post an adequate security as required by 19 U.S.C. § 1671b(d)(2) (1988).[7]

---

6. The statutory language at issue in *Canadian Fur Trappers Corp.* states "When such a suspension of liquidation is removed, the entry shall be liquidated within 90 days therefrom." 19 U.S.C. § 1504(d) (1988).

7. Following the publication of an affirmative preliminary determination of subsidization, Commerce "shall order the posting of a cash deposit, bond, or other security, as it deems appropriate, for each entry of the merchandise concerned

Customs later accepted the entry summaries when a sufficient bond was posted, and plaintiff ultimately posted appropriate bonds on all nine entries.

■ The Court rejects plaintiff's contention that "[n]either hand-writing a countervailing duty investigation case number or [sic] posting a bond is an 'assertion' of an amount by the importer." (Pl.'s Br. at 7.) Rather, the Court finds plaintiff's notation of the appropriate investigation number on the CF 7501 forms or the accompanying entry summary documentation, as well as plaintiff's posting bonds to cover countervailing duties, are actions sufficient to constitute an assertion of countervailing duties, and accordingly the plaintiff is liable for payment of countervailing duties on the entries in question. *See American Permac, Inc. v. United States,* 10 CIT 535, 544 n. 12, 642 F.Supp. 1187, 1195 n. 12 (1986) ("The amount of duties 'asserted at the time of entry by the importer', within the meaning of § 1504(a) and (d), is not what the importer *desires* to assert upon entry, but what the importer is *required by Customs officers* to assert when filing the entry summary."); *cf. Detroit Zoological Soc. v. United States,* 10 CIT 133, 137 n. 9, 630 F.Supp. 1350, 1355 n. 9 (1986) ("[T]he rate of duty corresponding to the classification asserted 'at the time of entry' is that which is on the entry summary accepted by Customs and contains *not* what the importer, his consignee, or agent necessarily desires but rather what Customs insists upon as a condition precedent to release of the merchandise."). While the exact rate and amount of duties was not specified by Rheem on the entry summary documents, by listing the investigation number and posting appropriate bonds for countervailing duties, Rheem acknowledged its liability for countervailing duties payable at the rate ultimately determined to be appropriate by Commerce.

Plaintiff, in its second argument against Customs' assertion and collection of countervailing duties on the nine entries in question, asserts Customs unlawfully assessed "increased" countervailing duties on the entries in question following their liquidation by operation of law. Plaintiff argues the entries

became liquidated by operation of law at the rate asserted by plaintiff—which did not include countervailing duties—and therefore Customs' assessment and collection of countervailing duties constitutes an assessment of "increased" countervailing duties.

While the plaintiff is correct in stating Customs did collect countervailing duties on the entries after they had become liquidated by operation of law, plaintiff's description of Customs' action as collecting "increased" countervailing duties is inaccurate. Rather than collecting "increased" countervailing duties, Customs was collecting the countervailing duties it believed to be due on the entries following Commerce's publication of the first administrative review. Further discussion on this point, however, is unnecessary based on the Court's finding that the entries in question became liquidated by operation of law upon the dates of the fourth anniversary of their entry into the United States. Additionally, because the Court finds that the entry summary documents filed by plaintiff, as well as its posting bonds to cover countervailing duties, constitute an assertion of liability for countervailing duties under 19 U.S.C. § 1504(d), all that remains in disposing of this case is a brief discussion of the countervailing duty rates at which the entries became liquidated at by operation of law.

■ The statute clearly states that entries liquidated by operation of law are liquidated at "the rate of duty, value, quantity, and amount of duty asserted at the time of entry by the importer." 19 U.S.C. § 1504(d) (1988). Between February 10, 1984 and April 25, 1984, importers of Brazilian carbon steel products within the scope of Commerce's countervailing duty investigation were required to post a bond or deposit cash equal to 27.42% of the merchandise's value in order to make entry. Consistent with Commerce's preliminary determination, the bonds posted by Rheem in the process of importing the first five entries at issue were calculated at a rate of 27.42% *ad valorem.* Accordingly, the Court finds that the five entries which were imported to the United States after

equal to the estimated amount of the net subsi-

dy." 19 U.S.C. § 1671b(d)(2) (1988).

February 10, 1984 and before April 26, 1984 were liquidated by operation of law with countervailing duties due in the amount of 27.42% *ad valorem.*

As for the remaining four entries, which were imported into the United States on or after April 26, 1984 and before June 22, 1984, importers of carbon steel products from Brazil were required to post a bond or deposit cash equal to the countervailing duty rates published in Commerce's final determination in the *Certain Carbon Steel Products from Brazil* countervailing duty investigation. Those rates were 36.48% for COSIPA, 62.18% for CSN, 17.49% for USIMINAS, and 36.95% for all other manufacturers, producers, or exporters. Accordingly, the Court finds the merchandise manufactured by CO-SIPA, CSN or USIMINAS which entered the United States on or after April 26, 1984 and before June 22, 1984 was liquidated by operation of law with countervailing duties due in the amount of 36.48% *ad valorem,* 62.18% *ad valorem,* and 17.49% *ad valorem,* respectively. With respect to the merchandise which Rheem asserted it manufactured on the SSSI forms accompanying the entries, the Court is unclear whether Customs uniformly required plaintiff to post a bond at the rate of 62.18% *ad valorem* in order to enter that merchandise.[8] Therefore, the Court finds merchandise which plaintiff incorrectly stated was manufactured by Rheem on its SSSI forms was liquidated by operation of law at the rate which Customs required plaintiff to post a bond in order to enter that merchandise.

CONCLUSION

The nine entries at issue in this litigation, which were not subject to suspension of liquidation by operation of statute or court order, became liquidated by operation of law upon the fourth anniversary of their dates of entry into the United States.

Additionally, the entries at issue became liquidated by operation of law at the rate of duty, value, quantity, and amount of duty asserted by plaintiff on the entry summary documentation accompanying the merchandise. With respect to the five entries which were imported to the United States after February 10, 1984 and before April 26, 1984, the Court finds Rheem asserted countervailing duties at the rate established by Commerce's preliminary determination in the *Certain Carbon Steel Products from Brazil* investigation.[9] Accordingly, those entries became liquidated by operation of law with countervailing duties due in the amount of 27.42% *ad valorem.* As for the remaining four entries, which were imported into the United States on or after April 26, 1984 and before June 22, 1984, the Court finds Rheem asserted countervailing duties at the rate established by Commerce's final determination in the *Certain Carbon Steel Products from Brazil* countervailing duty investigation.[10] Accordingly, those entries became liquidated by operation of law with countervailing duties due in the amount of 36.48% *ad valorem,* 62.18% *ad valorem,* and 17.49% *ad valorem,* for merchandise manufactured by

8. The Court notes that with respect to the merchandise included in entry No. 558-84231317-5, in order to have its entry summary papers accepted as filed in proper form, plaintiff was required to post a bond for countervailing duties at the rate of 62.18% *ad valorem* on merchandise which the SSSI forms accompanying the goods incorrectly identified as manufactured by Rheem. *See* Def.'s Br. at 4-5.

9. Commerce's preliminary determination in the *Certain Carbon Steel Products from Brazil* investigation, which established a countervailing duty rate of 27.42% *ad valorem,* was the only countervailing duty rate applicable to the first five entries *at their time of entry into the United States.* Before Customs accepted plaintiff's entry summary documentation as filed in proper form, plaintiff was required to post bonds in the amount of 27.42% of the value of the merchandise entered.

10. Commerce's final determination in the *Certain Carbon Steel Products from Brazil* investigation established countervailing duty rates of 36.48% *ad valorem,* 62.18% *ad valorem,* and 17.49% *ad valorem* for merchandise manufactured by COSIPA, CSN and USIMINAS, respectively. These rates were the countervailing duty rates applicable to the last four entries *at their time of entry into the United States.* Before Customs accepted plaintiff's entry summary documentation as filed in proper form, plaintiff was required to post bonds calculated at the relevant percentage of the imported merchandise's value, depending on which manufacturer was responsible for producing the goods.

COSIPA, CSN and USIMINAS, respectively. As for the merchandise plaintiff asserted was manufactured by Rheem in the SSSI forms accompanying those entries, those goods were liquidated by operation of law with countervailing duties due at the rate which Customs required plaintiff to post a bond in order to enter that merchandise. Customs will reliquidate the goods to the extent necessary to be in compliance with the Court's findings.

JUDGMENT ORDER

This case having been duly submitted for decision and this Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision, it is hereby

**ORDERED** that plaintiff's motion for summary judgment is denied; and it is further

**ORDERED** that defendant's cross-motion for summary judgment asserting the nine entries at issue were not eligible to be liquidated by operation of law and defendant's corresponding counterclaim are denied; and it is further

**ORDERED** that defendant's cross-motion for summary judgment asserting the nine entries at issue became liquidated by operation of law with countervailing duties due at the rate of 27.42% *ad valorem* or 21.13% *ad valorem* is granted in part and denied in part; and it is further

**ORDERED** Customs is directed to reliquidate the nine entries at issue in Court No. 92–06–00380, in accordance with this opinion; and it is further

**ORDERED** that this case is dismissed.